STATE OF CONNECTICUT *v.* GEORGE GOULD
(SC 15268)

STATE OF CONNECTICUT *v.* RONALD TAYLOR
(SC 15269)

Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued January 23—officially released May 20, 1997

*Glenn W. Falk,* special public defender, with whom, on the brief, was *Donald D. Dakers,* special public defender, for the appellant in Docket No. 15268 (defendant in Docket No. 15268).

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *James G. Clark,* assistant state's attorney, and *Jason A. Schroder,* legal intern, for the appellee in Docket No. 15268 (state in Docket No. 15268).

*Elizabeth M. Inkster,* assistant public defender, for the appellant in Docket No. 15269 (defendant in Docket No. 15269).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* supervisory assistant state's attorney, for the appellee in Docket No. 15269 (state in Docket No. 15269).

*Opinion*

MCDONALD, J. After a joint trial before a jury, the defendants, Ronald Taylor and George Gould, were each convicted of felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-8, criminal attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2), 53a-8 and 53a-49, and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (2).[1] The defendants each have appealed

---

[1] General Statutes § 53a-54c provides in pertinent part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

General Statutes § 53a-134 (a) provides in pertinent part: "A person is

from the respective judgments of the trial court, sentencing them to total effective sentences of eighty years imprisonment,[2] to this court pursuant to General Statutes § 51-199 (b) (3).

The defendants both claim that the trial court improperly allowed the jury to replay the videotaped testimony of a state's witness in the jury room. In his appeal, Taylor also claims that: (1) the evidence was insufficient to support his convictions of attempted robbery in the first degree, robbery in the first degree and felony murder; (2) the trial court improperly limited his cross-examination of a witness; (3) the trial court improperly precluded evidence of that same witness' character for

guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

General Statutes § 53a-8 provides in pertinent part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes § 53a-49 provides in pertinent part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

Each of the defendants was also acquitted of murder. See General Statutes § 53a-54a (a).

[2] Each of the defendants was sentenced to sixty years imprisonment on the felony murder count and twenty years for each of the remaining counts. The twenty year sentences run concurrent to each other, but consecutive to the sixty year sentence.

truthfulness and veracity; (4) the trial court improperly admitted misconduct evidence; and (5) his convictions of attempted robbery in the first degree and robbery in the first degree violate the prohibition against double jeopardy. We affirm the judgments of the trial court with the exception of our conclusion that Taylor's convictions of attempted robbery in the first degree and robbery in the first degree must be merged and the sentence for attempted robbery in the first degree vacated.

The jury reasonably could have found the following facts. On July 4, 1993, at approximately 5:35 a.m., the defendants entered La Casa Green, a retail store, on Grand Avenue in New Haven. The owner, Eugenio Vega, had opened the store shortly after 5 a.m. and was the only person in the store. The defendants tied up Vega's hands with electrical cord, placed him in the store's cooler, and fatally shot him in the head. The defendants took money and jewelry from Vega's safe and searched through Vega's wallet.

The state's principal witness was Doreen Stiles. She testified that after she observed Gould enter the store, she hid in the alleyway next to the store. From her hiding place, Stiles heard the voices of three people arguing in the store, including Vega, who was screaming. She distinctly heard Vega and the defendants arguing about money and opening the safe. After a couple of minutes, Stiles heard a single gunshot. She then observed both of the defendants leave the store.

I

Taylor claims that the evidence was insufficient to support his convictions of felony murder, robbery in the first degree and attempted robbery in the first degree. He argues that there was no evidence that either a robbery or an attempted robbery was committed at La Casa Green. Taylor asserts that it was not established

what had been in the safe or that anything was missing from the safe, and that there was no evidence that anything was missing from Vega's person. Taylor asserts, therefore, that without evidence of a robbery or an attempted robbery, his convictions of those offenses as well as of felony murder must be reversed. We conclude that there was sufficient evidence to convict Taylor of each count.

We apply a two part test in analyzing a sufficiency of the evidence claim. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Greenfield*, [228 Conn. 62, 76, 634 A.2d 879 (1993)]. . . . *State* v. *Mejia*, 233 Conn. 215, 223, 658 A.2d 571 (1995). While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. *State* v. *Castonguay*, 218 Conn. 486, 507, 590 A.2d 901 (1991). If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. *State* v. *Grant*, 219 Conn. 596, 604–605, 594 A.2d 459 (1991). *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521 (1992). [W]e must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is

sufficient evidence to support the jury's verdict. . . . *State* v. *Mejia*, supra, 224." (Internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 435–36, 678 A.2d 1338 (1996).

Susana Negron, the victim's daughter, testified that she did the bookkeeping for her father's store. At the beginning of each week, Negron would make deposits for her father of receipts totaling between $3000 and $10,000. The week before her father's murder, however, she did not make a deposit. Her father had instructed her not to make a deposit that week because he planned to use those receipts to make a downpayment on a building that he intended to purchase. Negron further testified that during December, 1992, before her father's murder, she had seen the contents of the floor safe in the back of La Casa Green, and that the safe contained jewelry, documents, papers, cash and coins. The jewelry included a "beautiful diamond earring" that Vega intended to leave for his wife, but Negron never saw the earring again after her father's death.

Officer Keith Wortz of the New Haven police department was the first officer to enter La Casa Green following the shooting. Wortz testified that after finding no one in the front of La Casa Green, he entered the back area of the store. There he saw an open floor safe with items on the floor outside of the safe and leaning on the open door. Wortz also saw a wallet on a box next to the safe. He then entered the cooler and found Vega's still warm body.

Detective Chris Grice of the New Haven police department then arrived at the store. Grice testified that he found the cash register keyed on with coins and bills inside. He stated that there did not appear to be any money missing from the cash register. In the back of the store, however, he observed bank statements and a paper band, of the type used to wrap money, on

the floor. The safe was open and there were jewelry boxes inside, but there was no money or jewelry in the safe. Grice also found Vega's wallet, which did not contain any money, although Vega had $1800 in the front pocket of his trousers.

We conclude that from this evidence, considered with the testimony of Stiles that she saw Gould and Taylor leave the store, the jury reasonably could have found that Taylor was guilty of attempted robbery in the first degree, robbery in the first degree and felony murder. The jury was entitled to believe that the defendants entered the store with the intention of robbing the contents of Vega's safe. It was not necessary, as Taylor argues, that the defendants also had to take the money from the cash register and Vega's trouser pockets. It was reasonable for the jury to find that during this frenzied robbery and murder, the defendants were after the largest amount of cash and valuables, which would be found in the safe, and therefore, that the defendants did not take the time to search the cash register and Vega's trouser pockets. The jury also could have found that the defendants may have taken the time to check Vega's wallet before tying him up and shooting him.

Furthermore, it was reasonable for the jury to conclude that the defendants found valuable items in Vega's safe. While the contents of the safe may have changed since Negron had last seen them several months earlier, testimony sufficiently established that valuables, including jewelry, would have been in the safe, but were stolen by the defendants. Grice also testified that he found empty jewelry boxes and a money wrapper in the back of the store. Since Negron did not make the usual weekly deposit of receipts the week before these crimes, the jury could find that this money likely had been in the safe. The jury's verdict, finding that something was taken such as money and jewelry, was a reasonable inference by it.

## II

Each of the defendants claims that the trial court abused its discretion and unduly emphasized Stiles' testimony by permitting the jury to replay her videotaped testimony in the jury room outside of the court's supervision. Gould made this claim before the trial court. Taylor, who did not make such a claim, seeks plain error review.[3] We are unpersuaded that the trial court abused its discretion in allowing the jury to replay the videotaped testimony or that the court placed undue emphasis on Stiles' testimony by permitting the jury to review the testimony in the jury room outside of the court's supervision. We do hold, however, under our supervisory authority, that in the future this state's trial courts should supervise the jury review of such videotaped deposition testimony.

[3] Taylor did not preserve this issue for review, but relies on *State* v. *Pelletier*, 196 Conn. 32, 34, 490 A.2d 515 (1985), for the proposition that "[e]ven if *State* v. *Evans* [165 Conn. 61, 70, 327 A.2d 576 (1973)] were not controlling, the failure by this defendant fully to challenge [this issue] at trial would not be dispositive, since his codefendant adequately alerted the trial court to the possibility of error in a timely fashion." The record reflects that Gould's counsel did clearly object to the presentation of the videotape to the jury. Taylor's reliance on *Pelletier*, however, is too great. "That case does not stand for the proposition that whenever a codefendant makes a trial motion in which the defendant did not join, the silent defendant may raise the denial of the motion in his appeal." *State* v. *Walton*, 227 Conn. 32, 55 n.20, 630 A.2d 990 (1993). When a defendant does not join a codefendant's motion for tactical or other reasons, the defendant cannot later complain of the procedure on appeal. Id. In this case, Taylor's counsel argued to the jury that Stiles' out-of-court identification of his client was unreliable, indicating to the jury that it could see in the videotaped testimony that Stiles did not know which photograph she had identified as being that of the perpetrator until the state's attorney showed her signature on one of the photographs to her. It would, therefore, not be anomalous to treat the review of each of the defendants' claims concerning the videotaped testimony differently. Id.

Taylor, nevertheless, claims plain error under Practice Book § 4185 (now § 4061). "Plain error is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . ." (Internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 502, 687 A.2d 489 (1996).

As part of its case-in-chief, the state filed a motion pursuant to Practice Book §§ 791 (1) and 803 (4)[4] for a videotaped deposition of Stiles. In support of its motion, the state presented Stiles' treating physician, Susan Goldie, who testified that Stiles had been admitted to Saint Raphael's Hospital six days earlier with endocarditis, an infection of the heart valves. Goldie stated that Stiles was suffering from complications associated with endocarditis, including bacteriemia, a continuous and uncontrolled infection, which had spread to other parts of Stiles' body. Goldie testified that Stiles was being treated with antibiotics, but could require emergency surgery, and that Stiles could not be brought to court. On the basis of this evidence, the trial court granted the state's motion.[5]

The following day, the testimony of Stiles was videotaped in her hospital room. The trial judge, the state's

[4] Practice Book § 791 provides in pertinent part: "In any case involving an offense for which the punishment may be imprisonment for more than one year the judicial authority, upon request of any party, may issue a subpoena for the appearance of any person at a designated time and place to give his or her deposition if such person's testimony may be required at trial and it appears to the judicial authority that such person:

"(1) Will, because of physical or mental illness or infirmity, be unable to be present to testify at any trial or hearing . . . ."

Practice Book § 803 provides in pertinent part: " 'Unavailable' as used in Sec. 793 includes situations in which the deponent . . .

"(4) Is unable to be present or to testify at a trial or hearing because of his or her death or physical or mental illness or infirmity . . . ."

[5] The defendants initially objected to the videotaping of Stiles' testimony pursuant to Practice Book § 796. The defendants argued to the court that § 796 did not authorize a videotaped deposition. They do not, however, pursue that objection before this court.

Practice Book § 796 provides: "[Depositions]—Manner of Taking

"The witness shall be put on oath and a verbatim record of his or her testimony shall be made. The testimony shall be taken stenographically and transcribed, unless the judicial authority orders otherwise. In the event that the judicial authority orders that the testimony at a deposition be recorded by other than stenographic means, the order shall designate the manner of recording, preserving, and filing the deposition, and it may include other provisions to assure that the recorded testimony will be accurate and trust-

attorney, the defendants and their counsel, and a court reporter were present. The state examined Stiles, and each of the defendants had a complete opportunity to cross-examine her. A transcript of the proceedings was prepared by the court reporter. Several days later, the parties edited the videotaped testimony in accordance with the court's rulings on objections made during the taping.

After the editing session, Gould's counsel suggested that a transcript should be made of the edited videotape in case the jury requested to hear it during deliberations. Gould's counsel argued that a witness' testimony is normally reread to a jury from transcripts and that permitting a jury again to see a witness' visual presentation during deliberations would emphasize the testimony beyond that of other witnesses. At the time, the trial court did not rule on the objection. Following closing arguments, Gould's counsel repeated the objection, and the trial court ruled that should the jury request to see the videotaped testimony of Stiles, it would be permitted to do so.

During deliberations, the jury did request to view the videotaped testimony of Stiles in the jury room. The trial court granted that request. Both the state and the defendants recognize that this issue has not previously arisen in Connecticut. The parties also recognize that pursuant to Practice Book § 863,[6] the trial court has discretion to determine what portions of the record, if any, should be submitted to the jury for its review. *State v. Harris*, 227 Conn. 751, 770–71, 631 A.2d 309 (1993);

worthy. If such an order is made, a party may nevertheless arrange to have a stenographic transcription made at his or her own expense."

[6] Practice Book § 863 provides: "If the jury after retiring for deliberations request a review of certain testimony, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the judicial authority, after notice to and consultation with the prosecuting authority and counsel for the defense, shall have the requested parts of the testimony read to the jury."

*State* v. *Rivera*, 223 Conn. 41, 48, 612 A.2d 749 (1992); *State* v. *Bennett*, 171 Conn. 47, 59, 368 A.2d 184 (1976). The defendants argue, however, that they were prejudiced by the replaying of the videotape because it unduly emphasized Stiles' testimony over the other evidence in the case. They contend that the jury could not again view the testimony of other witnesses and that the jury's review of the videotape essentially allowed Stiles to testify twice. The defendants assert that this was particularly prejudicial in this case because the jury's review of the videotape was unsupervised by the trial court and, they argue, the state's entire case depended on the testimony of Stiles.[7]

The defendants argue that the trial court violated § 863, which generally provides for the rereading of testimony in open court under circumstances, not applicable here, in which the court reporter must read back trial testimony from stenographic notes or locate and play back a recorded voice tape of such testimony on a tape player. This procedure also ensures that where the jury does not request to hear a witness' entire testimony again, only the portion sought by the jury is heard by it. Finally, § 863 ensures that colloquies, hearings and testimony that are not to be heard by the jury are omitted. None of these concerns was raised by this prerecorded and edited videotape of Stiles, whose entire testimony the jury sought.

We conclude that our Practice Book rules did not prohibit the trial court from allowing the jury to review Stiles' testimony. This court long ago stated: "If jurors are to decide cases, as their oaths require them to, according to the evidence before them, or according to the evidence given them in court, why should they not,

---

[7] The state's attorney argued in closing that "this case rises and falls on the testimony of Doreen Stiles." The state's attorney also suggested to the jury that it should view the whole videotape again during its deliberations. Taylor's counsel did so as well. See footnote 3.

when they have forgotten a material part of the evidence, be permitted to make use of an available and generally most reliable means of recalling it? It is the policy of the law that every tribunal for the trial of civil or criminal causes should have open to it the best legitimate means of acquiring such knowledge of the law and the facts as will enable it to decide the cases before it fairly and intelligently." *State* v. *Rubaka*, 82 Conn. 59, 67, 72 A. 566 (1909). Accordingly, this court concluded that the trial court was not " 'without authority' " to furnish the jury with a typewritten transcript of the testimony it had requested, which the jury could use in the jury room as it saw fit. Id., 66; see also *State* v. *Cari*, 163 Conn. 174, 184, 303 A.2d 7 (1972).

In this case, the most reliable means for the jury to review Stiles' testimony was to view the videotape. The videotaped testimony had been edited by the trial court, with the assistance of counsel, to remove all objectionable portions. We reject the defendant's argument that Stiles was essentially allowed to testify twice for the state. Stiles, because of medical necessity, had never personally appeared before the jury. Therefore, both times that the jury viewed the videotape it observed the same aspects of her demeanor. Of course, if Stiles had personally testified before the jury, then the jury would have had a better opportunity to evaluate her testimony. Although "a picture is worth a thousand words," some aspects of Stiles' reactions and demeanor while testifying were lost in the one-dimensional electronic images. We believe that the jury should not be denied the opportunity to use the best and most reliable means available to review Stiles' testimony. We conclude that allowing the jury to view the testamentary videotape of Stiles, as it requested, was a discretionary matter for the trial court, and that the court did not abuse that discretion.

We are cognizant, nevertheless, of the concerns set forth by the defendants and the cases they have cited. These cases emphasize, and we agree, that the decision whether to replay videotaped testimony "must be based on particular facts and circumstances of the case." *United States* v. *Binder*, 769 F.2d 595, 600 (9th Cir. 1985). In *Binder*, the videotaped testimony of children accusing the defendant of molestation was replayed to the jury and contradicted the defendant's live testimony. There, balancing credibility became a crucial issue, and the jury could not see the defendant's testimony again. Id., 601. The court concluded that "[u]nder these circumstances the [children's] videotaped testimony may have taken on greater significance." Id. Here, while Stiles' credibility was a key issue, there was no such balance to be struck. There was also no danger that the jury could give undue weight to the videotaped testimony of Stiles over in-court testimony of Stiles as no such in-court testimony concerning the robbery was presented. See *People* v. *Montoya*, 773 P.2d 623, 625 (Colo. App. 1989).[8] Stiles was not the victim of the crimes in this case and her videotaped testimony, which we have reviewed, does not engender the passion, animation or sympathy presented in the videotapes of child victims of sexual abuse. Several courts in such abuse cases have also expressed concern over allowing juries to replay videotapes in the jury room unsupervised. *United States* v. *Binder*, supra, 601 n.1; *State* v. *Michaels*, 625 A.2d 489, 523–24 (N.J. Super. 1993); *Taylor* v. *State*, 727 P.2d 274, 276 (Wyo. 1986); *Chambers* v. *State*, 726 P.2d 1269, 1276 (Wyo. 1986). These cases have held that trial courts must employ a controlled procedure to allow the juries to view such videotapes. See *Taylor* v. *State*, supra, 276.

Gould, however, has not persuaded this court that he suffered any prejudice from the trial court's decision

---

[8] In *People* v. *Montoya*, supra, 773 P.2d 625, the videotape showed inconsistent statements of a witness who later testified before the jury.

to allow the jury to replay Stiles' videotaped testimony. See *United States* v. *Sacco*, 869 F.2d 499, 502–503 (9th Cir. 1989). Likewise, Taylor has not demonstrated that the trial court committed plain error. Since we have allowed transcripts of testimony to be read to the jury, the trial court's actions here did not violate our rules of practice.

There is value, nevertheless, in requiring trial courts to supervise a jury's review of videotaped deposition testimony. Trial courts should ensure that juries do not place undue emphasis on a witness' testimony merely because it has been videotaped. We therefore exercise our supervisory power over the courts' administration of justice. *State* v. *Patterson*, 230 Conn. 385, 397, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996); *State* v. *Holloway*, 209 Conn. 636, 645–46, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). Where a court decides, pursuant to that court's sound discretion, that the jury should be permitted to replay videotaped deposition testimony, it must be done in open court under the supervision of the trial judge and in the presence of the parties and their counsel.

### III

Taylor claims that the trial court improperly precluded him from cross-examining Stiles concerning her motive, bias and interest in testifying. He argues that the trial court's rulings during his cross-examination of Stiles violated the rules of evidence and his constitutional right to present a defense. We conclude that this claim lacks merit because Taylor has failed to establish that his areas of inquiry were relevant to the credibility of Stiles.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . .

The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. *Greene* v. *McElroy*, 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959). Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. *State* v. *Lubesky*, 195 Conn. 475, 481–82, 488 A.2d 1239 (1985). . . . *State* v. *Colton*, 227 Conn. 231, 248–49, 630 A.2d 577 (1993).

"The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . *State* v. *Barnes*, [232 Conn. 740, 746, 657 A.2d 611 (1995)]. Thus, [f]rom early times, it has consistently been held that it rests within the judicial discretion of the trial court whether to admit the impeaching statement where no foundation has been laid. . . . The trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case. . . . *State* v. *Williams*, 204 Conn. 523, 534, 529 A.2d 653 (1987). . . . Moreover, it is well settled that questions of relevance are committed to the sound discretion of the trial court. *State* v. *Weidenhof*, 205 Conn. 262, 277, 533 A.2d 545 (1987)." (Citations omitted; internal quotation marks omitted.) *State* v. *Barletta*, 238 Conn. 313, 331–32, 680 A.2d 1284 (1996).

On cross-examination, Taylor sought to inquire whether Stiles acquired her last name by marriage, how many times she had been arrested by police and how many times she had been prosecuted following those arrests. The state objected to these questions and the trial court sustained the objections. The court held that whether the witness was married was not relevant and that defense counsel had not made a sufficient showing of bias.

On direct examination, the witness testified that her name was Doreen Stiles, but that she was registered at the hospital under her maiden name, Drenyoczky, because her insurance was in that name. On cross-examination by Gould's counsel, she further testified that she was separated from her husband. The state objected to the questioning of Stiles concerning her marital status, which objection the court noted. Taylor's counsel then attempted to explore how the witness had acquired the name Stiles. On appeal, Taylor argues that the questions were relevant to show that Stiles had lied about being married. We conclude that this inquiry was too remote from the central issues in the case and, therefore, well within the trial court's discretion to exclude.[9] See *State* v. *Hackett*, 182 Conn. 511, 518, 438 A.2d 726 (1980); see also *State* v. *Barnes*, supra, 232 Conn. 748–49. Moreover, Taylor would have been precluded from presenting extrinsic evidence that Stiles was not married absent some showing that it was directly relevant and material to the merits of the case. See *State* v. *Colton*, supra, 227 Conn. 247–48 (collateral matters).

Taylor also sought to impeach Stiles' credibility by asking her how many times she had been arrested and prosecuted. Following the state's objection, Taylor's counsel argued that if the witness was arrested frequently, but was not prosecuted by the state's attorney's

---

[9] Taylor argues that he had a good faith belief that Stiles was not telling the truth about her name and that all of the parties were aware of this basis. Taylor points out that during voir dire, a prospective juror stated that he knew Doreen Stiles since she had had a relationship with his stepson. The prospective juror stated that his stepson's last name was Stiles and that Doreen Stiles had taken the last name from his stepson even though they were not married. The relevance of evidence may be established by making an offer of proof, by stating a good faith belief that there is an adequate factual basis, or the record independently may be adequate. See *State* v. *Beliveau*, 237 Conn. 576, 586, 678 A.2d 924 (1996). Despite Taylor's showing, however, we still conclude that Taylor has not demonstrated that Stiles' marital status is relevant to any issue in this case.

office, there would be a showing of bias. The state countered that there was no good faith basis for such a claim. Taylor's counsel did not then make any showing that Stiles repeatedly had been arrested and not prosecuted. Additionally, his counsel did not limit the area of inquiry to the specific time period after Stiles had identified the defendants as the perpetrators.

In *State* v. *Santiago*, 224 Conn. 325, 332, 618 A.2d 32 (1992), we held that a defendant must be afforded the opportunity to cross-examine a witness concerning the witness' relationship to the prosecuting authorities in a criminal case. In that case, there was specific evidence in the record that the witness did have a relationship with the authorities. Id., 330. Here, Taylor's counsel "never removed from the realm of counsel's speculation, however, by the introduction of competent evidence or an offer of proof," his theory that police had often arrested Stiles on prostitution or drug charges, but in exchange for her statement identifying Taylor, she had never been prosecuted on any of those charges. *State* v. *Ireland*, 218 Conn. 447, 451, 590 A.2d 106 (1991).

We further note that Taylor's counsel was permitted to ask Stiles how many times she had been convicted. Stiles responded: "I have not been convicted because I have not committed any felonies. I have only had misdemeanors." Taylor's counsel did not pursue this line of questioning any further, but did question Stiles concerning her testimony that she gave her statement to police after being arrested on a charge of prostitution for which she was never prosecuted. We conclude that Taylor's right to cross-examine Stiles was not unduly restricted and the trial court did not abuse its discretion in ruling as it did. *State* v. *Barletta*, supra, 238 Conn. 332; *State* v. *Barnes*, supra, 232 Conn. 749.

IV

Taylor claims that the trial court improperly precluded evidence of Stiles' character for truthfulness and veracity. We are unpersuaded.

Taylor presented Mickey Miller as a witness. Miller testified that he knew Stiles because he had sold her drugs two or three times a week from the beginning of 1992 through July or August, 1993, and that Stiles had been to his home three times. He was also able to describe her appearance. Miller stated that he had been able to form an opinion through these drug transactions concerning the truthfulness of Stiles and also was aware of her reputation for truthfulness in the community. He testified that he had spoken to other people in the community concerning Stiles' reputation for truthfulness. The last time he had spoken with anyone regarding Stiles, however, was in July or August, 1993. The state objected to Miller testifying as to his personal opinion and as to Stiles' reputation in the community concerning her truthfulness, because Taylor had not laid a sufficient foundation based on Miller's drug transactions with Stiles. The trial court sustained the state's objection.

The veracity of a witness may be attacked by evidence of the witness' general reputation in the community for veracity. *State* v. *Gelinas*, 160 Conn. 366, 367, 279 A.2d 552 (1971). A witness' character for veracity may also be proved by opinion evidence of those who have formed an opinion as to the character of the witness with respect to truth and veracity. Id., 368; *State* v. *Blake*, 157 Conn. 99, 104, 249 A.2d 232 (1968). "Whether a witness has had sufficient contact with a person to be qualified to testify as to a particular character trait is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or of some error in law." (Internal quotation marks omitted.) *State* v. *George*, 194 Conn. 361, 368–69, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *State* v. *Pettersen*, 17 Conn. App. 174, 181, 551 A.2d 763 (1988), on appeal after remand, 20 Conn. App. 288, 566 A.2d 714 (1989), cert. denied, 213 Conn. 814, 569 A.2d 550

(1990). The witness must be able to testify as to the person's general reputation in the community at the time of the trial. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 8.5.1.

The trial court found that the drug transactions between Miller and Stiles, which may have taken only moments, were not sufficient to conclude that Miller would be able to form an opinion as to Stiles' truthfulness. Miller also had no contact with Stiles, and did not speak to anyone regarding her truthfulness, from shortly after the murders involved in this case until Taylor's trial in January, 1995. *State* v. *George*, supra, 194 Conn. 369. As one and one-half years had passed between the end of their association and the time of trial, and because Miller's testimony did not concern Stiles' general reputation in the community, we conclude that the trial court did not abuse its discretion in precluding this testimony.

V

Taylor claims that the trial court improperly admitted evidence that he had committed other crimes. We find no merit to this claim.

Before trial, the state filed a notice of intent to offer evidence of uncharged misconduct. The state set forth that it would offer evidence that the defendants jointly committed two robberies, within six hours of the time the robbery and murder in this case occurred, and that the defendants used the proceeds of at least one of those robberies to buy drugs. Taylor filed a motion in limine for the preclusion of evidence of uncharged misconduct, arguing that the evidence was not relevant. The trial court found that the evidence was relevant on the issue of conspiracy and that it could be argued that the motive of the crimes in this case was to raise money to buy drugs. The court held, therefore, that the state could introduce evidence that the defendants were

together at 11:30 p.m. on July 3, 1993, at one location obtaining money to buy drugs, and in the morning of July 4, 1993, at another location. The court precluded the state from presenting evidence that the defendants committed robberies at these locations.

The state introduced the following evidence. Detective Leroy Dease of the New Haven police department testified that during his investigation in this case, he spoke with Gould several times. Gould told Dease that he had left Tasha Grumes' apartment with Taylor and Lawrence Kelly around 11:30 p.m. on July 3, 1993. Gould stated that they had been trying to raise money near Grumes' apartment in order to buy drugs, that they had raised money and bought drugs, and that they had also given $30 to Grumes. Gould further told Dease that he had been at 480 Ferry Street with Taylor and Kelly at 3 a.m. on July 4, 1993, and that they also had been successful at raising money and buying drugs at that location. Gould stated that he and Taylor had then been at Gerrilyn Herring's house until 6:15 a.m.

Dease also had spoken with Taylor, who told Dease that he had been with Gould and Kelly that night. Taylor stated, however, that the incident at 480 Ferry Street had occurred at 11:30 p.m. and that the incident near Grumes' apartment had occurred in the early morning. Taylor further stated that Kelly had not been involved in the incident near Grumes' apartment. Taylor told Dease that he had gone to Herring's house at about 3 a.m. and left about 5:30 a.m.

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the

commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. . . . We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect.

"The primary responsibility for making these determinations rests with the trial court. We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Kulmac*, 230 Conn. 43, 60–61, 644 A.2d 887 (1994); see also *State* v. *Figueroa*, 235 Conn. 145, 162–63, 665 A.2d 63 (1995); *State* v. *Mooney*, 218 Conn. 85, 126, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991); *State* v. *Sierra*, 213 Conn. 422, 428, 568 A.2d 448 (1990); *State* v. *Morowitz*, 200 Conn. 440, 446, 512 A.2d 175 (1986); *State* v. *Braman*, 191 Conn. 670, 675, 469 A.2d 760 (1983).

Taylor argues that the trial court's ruling that the evidence could be introduced without reference to "robberies" failed to render the evidence admissible. Taylor essentially contends that because the jury heard that the attempts to raise money were made at night, the jury would believe that the attempts were robberies. The simple answer is that, particularly in light of other evidence adduced at trial, the jury need not reach such a conclusion. There was evidence that Pamela Youmans and Stiles were also out on the street in the early morning hours of July 4, 1993, looking for money to buy drugs. Youmans testified that she was trying to tag along with others whom she saw walking past her apartment and who might have been going for drugs, and Stiles testified that she would have done nearly anything, including prostituting herself, to raise money for drugs.

Misconduct evidence has often been "used to complete the story of the charged crime 'by placing it in the context of nearby and nearly contemporaneous happenings.'" *State* v. *Ali*, 233 Conn. 403, 427, 660 A.2d 337 (1995), quoting *State* v. *Cooper*, 227 Conn. 417, 424–25, 630 A.2d 1043 (1993). The evidence to which Taylor objects demonstrated that the defendants were together during the night of July 3, and the early morning of July 4, 1993. The evidence, therefore, corroborated Stiles' testimony that she saw the defendants leave La Casa Green together. See *State* v. *Cooper*, supra, 424; *State* v. *Santiago*, supra, 224 Conn. 338. The evidence was also admissible to show that the defendants had a motive to rob Vega as they continued their quest to raise money for drugs. *State* v. *James*, 211 Conn. 555, 578, 560 A.2d 426 (1989); *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982).

We conclude that the trial court did not abuse its discretion when it determined that the evidence could be admitted without reference to whether the defendants had committed other robberies on the night in question.[10] The evidence was not so prejudicial as to have shocked or influenced the jury so as to deprive Taylor of a fair trial. *State* v. *Cooper*, supra, 227 Conn. 427; *State* v. *Artieri*, 206 Conn. 81, 88–89, 536 A.2d 567 (1988); *State* v. *Nardini*, 187 Conn. 513, 523, 447 A.2d 396 (1982).

## VI

Finally, Taylor claims that his convictions of both robbery in the first degree and attempted robbery in the first degree violate the prohibition against double jeopardy. The trial court sentenced Taylor to twenty years imprisonment on each of those counts, to be served concurrent to each other and to twenty years

---

[10] The trial court was careful to preclude the evidence of other joint robberies although that evidence may have been admissible under our law. We need not decide here whether the admission of such evidence would have been an abuse of the trial court's discretion.

imprisonment for the conviction of conspiracy to commit robbery in the first degree, but consecutive to sixty years imprisonment for his felony murder conviction. The state concedes that pursuant to the *Blockburger*[11] test and *State* v. *Chicano*, 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), attempted robbery in the first degree is a lesser included offense of robbery in the first degree and the convictions of these offenses must be merged.

Under *Sibron* v. *New York*, 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968), and *Ginsberg* v. *New York*, 390 U.S. 629, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968), the multiple, although concurrent, sentences for these offenses cannot stand. Our cases require that the sentence for the merged lesser offense be vacated.

The judgment in Docket No. 15268 is affirmed. The judgment in Docket No. 15269 is reversed in part and the case is remanded to the trial court with direction to merge the defendant's conviction of robbery in the first degree with his conviction of attempted robbery in the first degree and to vacate the sentence for attempted robbery in the first degree only. The judgment of the trial court is not otherwise modified.

In this opinion the other justices concurred.

---

[11] *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932).