STATE OF CONNECTICUT *v.* EFRAIN M.[1]
(AC 25336)

Flynn, C. J., and Pellegrino and West, Js.

---

[1] In accordance with our policy of protecting the privacy interests of victims of sexual abuse, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Argued February 6—officially released May 23, 2006

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Efrain M., appeals from the judgment of conviction, rendered after a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1).[2] He claims on appeal that the trial court abused its discretion when it improperly admitted into evidence a videotape, in its entirety,

---

[2] General Statutes § 53-21 (a) provides in relevant part that "[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

of a forensic interview of the victims conducted shortly after the incidents underlying his conviction. We disagree and affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the issue on appeal. The events underlying the defendant's conviction occurred between April, 2001, and June, 2002. The victims, A and B, are twin girls who were nine years old at the end of that time period. They lived with their mother, siblings and stepfather, but often spent their weekends at the home of a female relative. The defendant is that relative's husband and resides with her.

In early July, 2002, the victims reported to their stepbrother, and then to their stepfather, that the defendant had been sexually abusing them, or attempting to do so, during their visits to the defendant's home. The family complained to the police, and the defendant was arrested. On July 22, 2002, Lisa Melillo-Bush, a school psychologist and experienced forensic interviewer, conducted separate interviews of each of the victims on behalf of the Center for Women and Families of Greater Bridgeport. During those interviews, the victims relayed to Melillo-Bush descriptions of various sexual acts that the defendant allegedly had committed, or had attempted to commit, on them. The interviews, which together lasted approximately one hour, were recorded on videotape. Neither the prosecutor nor defense counsel participated in the interviews.

On the basis of the victims' allegations, the state charged the defendant, in an amended, eleven count information filed on January 26, 2004, with three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2);[3] one count of attempt to

[3] General Statutes § 53a-70 (a) provides in relevant part that "[a] person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person

commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2)[4] and 53a-70 (a) (2);[5] three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2);[6] two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1);[7] and two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).[8] A jury trial was held on several days in January and February, 2004, at which each of the victims testified.

After cross-examining each victim, defense counsel argued for admitting into evidence a selected portion of that victim's videotaped interview as a prior inconsistent statement. See Conn. Code Evid. § 6-10.[9] While testifying, A had indicated that the defendant had engaged in certain acts on a date different from the one

---

is under thirteen years of age and the actor is more than two years older than such person . . . ."

[4] General Statutes § 53a-49 (a) provides in relevant part that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[5] See footnote 3.

[6] General Statutes § 53-21 (a) provides in relevant part that "[a]ny person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

General Statutes § 53a-65 (8) defines " '[i]ntimate parts' " as "the genital area, groin, anus, inner thighs, buttocks or breasts."

[7] See footnote 2.

[8] General Statutes § 53a-73a (a) provides in relevant part that "[a] person is guilty of sexual assault in the fourth degree when: (1) [s]uch person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[9] Connecticut Code of Evidence § 6-10 (a) provides that "[t]he credibility of a witness may be impeached by evidence of a prior inconsistent statement made by the witness."

she had reported to Melillo-Bush. B, in her testimony, had characterized her experiences of having dreams that sometimes came true somewhat differently from how she characterized them when speaking with Melillo-Bush. She also had testified that the defendant's "private part" had touched her own, although when she spoke with Melillo-Bush, she said that she had kicked the defendant away such that his attempt to touch her was not successful.

The court agreed that sufficient foundations had been laid for admission of the victims' prior inconsistent statements. It subsequently allowed defense counsel to play for the jury three brief excerpts from the video-taped interviews in which the victims made statements contrary to their testimony at trial.

Thereafter, the state offered as rebuttal evidence, pursuant to §§ 6-11[10] and 1-5[11] of the Connecticut Code of Evidence, the entire videotape of the interviews. Defense counsel objected, arguing that the contents of the videotape went beyond the scope of the excerpts he had offered as prior inconsistent statements. He argued further that the defense had had no involvement in the creation of the videotape and that, in essence, it would have the effect of bolstering the victims' testimony. According to the state, the issue of the timing of the defendant's acts was interwoven throughout the interviews and, given the meandering nature of discussions with children, it was important for the jury to consider the victims' statements within the broader con-

[10] Connecticut Code of Evidence § 6-11 (b) provides in relevant part that "[i]f the credibility of a witness is impeached by (1) a prior inconsistent statement of the witness . . . evidence of a prior consistent statement made by the witness is admissible, in the discretion of the court, to rebut the impeachment."

[11] Connecticut Code of Evidence § 1-5 (b) provides that "[w]hen a statement is introduced by a party, another party may introduce any other part of the statement, whether or not otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered with it."

text of their entire interviews. The court ultimately allowed submission of the entire videotape pursuant to §§ 1-5 and 6-11, accompanied by a limiting instruction to lessen any potential prejudice.[12] Another limiting instruction was included in the court's final charge to the jury.[13]

The videotaped interviews were played for the jury in open court.[14] Although the court apparently did not

---

[12] Prior to the playing of the videotape, the court instructed the jurors as follows: "All right. Ladies and gentlemen of the jury, what—what the state is attempting to do at this point is to introduce into evidence and to show to you a taped interview of [A and B], that you are—it's being offered as a prior consistent statement. As you recall, the defendant introduced evidence which [he] claims reflects prior inconsistent statements, so the state is now attempting to introduce evidence which will show prior consistent statements. You are to consider this tape only with respect to the following three issues. One, the whole question of time frames in general. Two, whether the defendant completed any alleged acts against [B]. And three, with respect to the whole question of dreams. You're not to consider any of it for the truth of the matter contained, but only as a prior consistent statement with respect to those three issues and for no other purpose."

[13] After explaining the proper use of the portions of the videotaped interview submitted by the defense as inconsistent statements, the court instructed the jurors as follows: "A type of evidence that is also present in this case is the introduction of evidence consistent with the trial testimony of the witness. I direct your attention to the state's exhibit two, which is the videotape interview of [A and B]. This exhibit was offered into evidence for the limited purpose of showing evidence that is consistent with the trial testimony of [A and B] regarding time frame in general, [B's] testimony regarding the attempted acts of wrongdoing by the defendant, and lastly, with respect to [B's] testimony regarding dreams. Generally, in the case of a witness who is not a party to the action, that is, someone other than the defendant, evidence of a statement made out of court, whether written or oral, that is consistent with . . . his testimony on the [witness] stand is inadmissible. However, the credibility of a witness may be supported by evidence of prior consistent statements made by the witness if the credibility of a witness is impeached by a prior inconsistent statement of the witness. You should consider such evidence, therefore, only to evaluate the credibility of the witness in determining the weight to be given to the witness' testimony on the [witness] stand and not to prove the truth of the matters asserted therein."

[14] During its deliberations, the jury requested replays of the interviews of each of the victims. The court granted those requests, and the interviews again were played in open court.

view the videotape prior to its being played to the jury, it inquired of counsel beforehand as to the videotape's contents. During that discussion, defense counsel acknowledged that "in its entirety [the videotape] is pretty much cumulative of what the jury has heard from [the victims] in person."

The jury found the defendant guilty of both counts of risk of injury to a child in violation of § 53-21 (a) (1), but not guilty of the remaining nine charged offenses. On March 19, 2004, the defendant received a total effective sentence of twenty years imprisonment, execution suspended after ten years, and five years of probation. This appeal followed.

The defendant now claims that the court improperly allowed the entire videotape of the victims' interviews to be admitted into evidence because it amounted to a replay of their trial testimony and had the effect of emphasizing that testimony over that of the other witnesses. He argues that the videotape included prejudicial and irrelevant material that necessarily generated sympathy for the victims. According to the defendant, the court improperly failed to balance the probative value of the videotape against the likely prejudicial impact of its admission, particularly, because prior to admitting it, the court questioned counsel about its contents rather than previewing it directly without the jury present. We are not persuaded.

We note at the outset our standard of review. It is well established that this court affords great deference to a trial court's evidentiary rulings. *State* v. *Hines*, 243 Conn. 796, 801, 709 A.2d 522 (1998). "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the

trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . This deferential standard is applicable to evidentiary questions involving hearsay, generally . . . and to questions relating to prior consistent statements, specifically." (Citations omitted; internal quotation marks omitted.) Id., 801–802.

The videotaped interview of the victims was admitted into evidence pursuant to both § 6-11 of the Connecticut Code of Evidence, which concerns prior consistent statements of a witness, and § 1-5, which concerns remainders of statements submitted partially. As to the former, "[p]rior consistent statements of a witness are generally regarded as hearsay and are not admissible at trial, either for their truth or for the purpose of rehabilitating a witness' damaged credibility. . . . The rationale upon which this rule is based is that the witness' story is not made more probable or more trustworthy by any number of repetitions of it. . . . This rule, however, is not absolute. The trial court, within its discretion, may admit a prior consistent statement if offered *to rehabilitate a witness who has been impeached by a prior inconsistent statement* . . . by the suggestion of bias, motive, or interest arising after the time the prior consistent statement was made . . . by a *claim of recent fabrication* . . . or by a claim of faulty memory . . . . When a prior consistent statement is admitted under any of these exceptions, it is admitted to affect credibility only and not to establish the truth of the statement." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 803–804.

As to the latter, "[i]t is an elementary rule of evidence that where part of a conversation has been put in evi-

dence by one party to a litigation or prosecution, the other party is entitled to have the whole conversation, so far as relevant to the question, given in evidence, including the portion which is favorable to him." (Internal quotation marks omitted.) *State* v. *Jackson*, 257 Conn. 198, 214, 777 A.2d 591 (2001). "Section 1-5 (b) applies to statements, and *its purpose is to ensure that statements placed in evidence are not taken out of context. . . .* This purpose also demarcates the rule's boundaries; a party seeking to introduce selected statements under the rule must show that those statements are, in fact, relevant to, and within the context of, an opponent's offer and, therefore, are part of a single conversation. . . . Although the cases upon which subsection (b) is based deal only with the admissibility of oral conversations or statements, the rule logically extends to written and recorded statements." (Citation omitted; emphasis added; internal quotation marks omitted.) *Cousins* v. *Nelson*, 87 Conn. App. 611, 617, 866 A.2d 620 (2005).

The provision of surrounding context additionally has been recognized as permissible for the purpose of rehabilitating, under § 6-11 (b), a witness whose credibility has been impeached by a prior inconsistent statement. As our Supreme Court has explained, when a witness has been impeached with selected, inconsistent portions of a prior statement, "[a]dmission of the entire statement allows the inconsistent portions of the statement to be placed into context and prevents misleading the jury. It precludes selective admission by one party that serves only to distort reality and allow legal technicalities to obfuscate the truth, thus undermining the jury's fundamental purpose." *State* v. *Hines*, supra, 243 Conn. 807; see also 4 C. Fishman, Jones on Evidence (7th Ed. 2000) § 26:42, p. 403 ("[w]here an impeaching attorney brings out portions of a prior statement which are or appear to be inconsistent with the witness's trial

testimony, the rehabilitating attorney is permitted to introduce other portions of the same statement which put the previously introduced portions in context and give the fact-finder a better sense of whether the prior statement was truly inconsistent with the witness's testimony").

This court previously has had opportunity to consider, in a case involving charges of sexual assault and risk of injury to a child, whether a trial court abused its discretion by allowing the state to rehabilitate the credibility of the victim after defense counsel, on cross-examination, had impeached her by questioning her about portions of her statement to police that were inconsistent with her trial testimony. See *State* v. *Apostle*, 8 Conn. App. 216, 243–45, 512 A.2d 947 (1986), superseded by statute on other grounds as stated in *State* v. *Kulmac*, 230 Conn. 43, 56–59, 644 A.2d 887 (1994). We rejected the defendant's claim that the court improperly allowed the state, on redirect examination, to question the victim about those portions of her statement that were consistent with her prior testimony, rather than limiting the scope of her redirect testimony to the inconsistencies highlighted on cross-examination. *State* v. *Apostle*, supra, 244–45. To accept the defendant's argument, we concluded, effectively would permit him to select "those portions of the witness' statement which he wished to emphasize on cross-examination," and "allow th[ose] alleged inconsistencies to be isolated and taken out of context"; id.; potentially misleading the jury.

A similar conclusion is warranted here. We have reviewed the excerpts of the videotaped interviews of the victims submitted by the defense as prior inconsistent statements, as well as the remaining portions of the interviews that the state presented in rebuttal, and conclude that the court properly allowed the balance of the interviews to be viewed by the jury so as to give

context to the isolated excerpts and to prevent the jury from being misled. Discussions of time frames and the defendant's alleged actions are scattered throughout the interviews and, apart from the instances highlighted by defense counsel, the victims' statements to Melillo-Bush did not contradict substantially their testimony at trial. Allowance of only the portions introduced by the defense would have distorted reality, likely leaving the jury with the impression that the victims had completely changed their stories between the time of the interviews and the time of trial. Cf. *State* v. *Vasquez*, 68 Conn. App. 194, 202, 792 A.2d 856 (2002) (court properly disallowed admission of redacted prior statement to show inconsistencies with witness' trial testimony, where redactions tended to confuse or mislead jury into believing witness did not provide complete statement to police); *Baxter* v. *Cardiology Associates of New Haven, P.C.*, 46 Conn. App. 377, 388, 699 A.2d 271 (court properly required that entirety of expert's deposition, rather than only selected portions, be introduced where testimony as to different defendants' negligence was intertwined and "both favorable and unfavorable to the plaintiff and to the defendants"), cert. denied, 243 Conn. 933, 702 A.2d 640 (1997). Under the circumstances, we cannot conclude that the court abused its discretion.

We note additionally that were we to have found improper the court's admission of the victims' video-taped statement, reversal of the judgment on that basis would not follow unless the defendant also could show that the statement's admission was harmful, i.e., "whether it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 397, 796 A.2d 1191 (2002). In assessing potential harmfulness flowing from improperly admitted evidence, a reviewing court may consider, among other things,

whether the evidence was cumulative. See *State* v. *Powell*, 93 Conn. App. 592, 601, 889 A.2d 885, cert. denied, 277 Conn. 924, 895 A.2d 797 (2006). As defense counsel conceded at trial, and as our review of the evidence confirms, the videotaped interviews were "pretty much cumulative of what the jury [already] ha[d] heard from [the victims] in person." Specifically, our review discloses that the videotape did not contain any allegations of the defendant's sexual misconduct other than those described by the victims in their testimony at trial, and the victims did not make any statements to Melillo-Bush regarding other unrelated bad acts of the defendant.[15]

Furthermore, we cannot ignore the fact that the defendant was acquitted of the majority of the charges against him. In regard to at least some of those charges, the victims' statements in the videotaped interviews and their consistent testimony at trial would have provided adequate evidentiary support for conviction. For example, A testified that the defendant had digitally penetrated her, and she also described such behavior to Melillo-Bush during her interview. Nevertheless, the defendant was acquitted of risk of injury to a child in violation of § 53-21 (a) (2) and sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A). See footnotes 6 and 8. Given these circumstances, it is difficult to conclude that it is more probable than not that the viewing of the videotaped interviews influenced the judgment of the jury to the defendant's detriment.[16]

---

[15] There were several instances during the victims' interviews when they stated that they feared the defendant because he had threatened to kill them if they told others of his actions. With the exception of one such instance, however, the videotape, when it was shown to the jury, was fast forwarded through the portions pertaining to the threats.

[16] Because we have concluded that the defendant has not shown prejudice resulting from the introduction of the videotape, it would serve no purpose to address his argument that the court improperly failed to employ a balancing test before allowing its admission into evidence. In any event, we agree with the state that in questioning counsel about the videotape's contents and crafting appropriate limiting instructions, the court effectively, if not explicitly, weighed the probative value of the videotape against its likely

Perhaps cognizant of the foregoing, the defendant essentially requests that we presume that prejudice occurred, given the sympathetic subject matter of the interviews. He claims, relying on a statement of dicta in a decision of our Supreme Court addressing a similar but distinct issue, that replay of the videotape amounted to a second round of testimony from the victims that, in a case involving allegations of sexual abuse of young children, necessarily aroused the sympathy of the jury such that he did not receive a fair trial. We are not convinced.

In *State* v. *Gould*, 241 Conn. 1, 10–11, 695 A.2d 1022 (1997), a case in which two defendants were tried jointly on murder and robbery charges, a key witness was unable to testify in person due to serious illness and so, instead, was permitted to testify from her hospital bed in a videotaped deposition conducted with the trial judge and counsel present. When, during deliberations, the jurors requested to see that witness' testimony again, the court allowed them to replay the videotape unsupervised in the jury room. Id., 11. On appeal, the defendants claimed that the court's granting of the jury's request was improper because it had the effect of unduly emphasizing the witness' testimony over the other evidence in the case. Id., 12. Our Supreme Court held that the court did not act improperly in allowing viewing of the videotape in the jury room, reasoning that the question of whether testimony should be replayed was one within the sound discretion of the trial court, to be exercised based on the facts and circumstances of a particular case. Id., 13–14. Nevertheless, it invoked its supervisory powers to direct that in future cases, "[w]here a court decides, pursuant to that court's sound discretion, that the jury should be permit-

---

prejudicial impact. We nevertheless would not discourage courts considering such evidence in the future from previewing it to ensure that, even if relevant, it is not overly prejudicial. See Conn. Code Evid. § 4-3.

ted to replay videotaped deposition testimony, it must be done in open court under the supervision of the trial judge and in the presence of the parties and their counsel."[17] Id., 15.

In the course of its analysis, our Supreme Court distinguished a case cited by the defendants in which, under similar circumstances, a reviewing court found that a trial court had abused its discretion. In *United States* v. *Binder*, 769 F.2d 595, 600–601 (9th Cir. 1985), overruled on other grounds by *United States* v. *Morales*, 108 F.3d 1031, 1035 n.1 (9th Cir. 1997), the alleged victims of the defendant's molestation, aged five and seven, testified solely via videotape to relieve their apprehension about appearing in court. During deliberations, the trial judge communicated with the jury without counsel present and allowed it to replay excerpts of the videotape unsupervised in the jury room. Id. The jury thereafter found the defendant guilty of the charged offenses. On appeal, the United States Court of Appeals for the Ninth Circuit reversed the judgment of conviction, holding that "replay of the videotape in the jury room during deliberations placed prejudicial emphasis on the complaining witnesses' testimony." Id., 600. The court noted "additional problems" and, perhaps acknowledging the importance of giving context to isolated statements of witnesses, stated that the trial court's "[f]ailure to replay the tape in its entirety may have placed an undue emphasis on the portion of the testimony revealed to the jury a second time." Id., 601.

In finding no abuse of discretion in *Gould,* our Supreme Court distinguished *Binder* in part on its facts, stating that the witness whose testimony was at issue

---

[17] In his appellate brief, the defendant concedes that the replaying of the videotape did not violate the strictures of *Gould.* He acknowledges that "the videotaped statements of the [victims] were played to the jury in open court and in the presence of the judge, counsel for the defendant and counsel for the state."

"was not the victim of the crimes in this case and her videotaped testimony, which [the Supreme Court] reviewed, does not engender the passion, animation or sympathy presented in the videotapes of child victims of sexual abuse." *State* v. *Gould*, supra, 241 Conn. 14. The defendant argues that this matter is similar to *Binder* and includes the elements acknowledged by our Supreme Court in *Gould* to be troublesome. Accordingly, he urges us to determine that the court, like the trial court in *Binder*, abused its discretion in allowing the jury to view the entire videotaped interview of the victims.

After careful consideration of *Gould*, *Binder* and other analogous cases, however, we conclude that the defendant's argument is misguided. At issue in those cases was not so much the jury's viewing of the video-taped testimony per se, but rather the circumstances under which the court allowed that viewing, namely, unsupervised in the jury room during deliberations. See id. (noting that "[t]hese [child abuse] cases have held that trial courts must employ a controlled procedure to allow the juries to view such videotapes"); see also *People* v. *Talley*, 824 P.2d 65, 66 (Colo. App. 1991) (court improperly "permitt[ed] the jury unrestricted and unsupervised access, during its deliberations, to the audiotape of a pretrial interview with the child [victim]");[18] *Taylor* v. *State*, 727 P.2d 274, 274–75 (Wyo. 1986) ("revers[ing] [the judgment] because the district court allowed the jury to view the testimonial videotape during deliberations without satisfying [statutory safeguards]").[19] Significantly, the defendant has not directed

[18] We note that subsequent to the decision of the Colorado Court of Appeals in *Talley*, the applicable rule of procedure was amended such that it "no longer prohibits unsupervised access to testimonial evidence, including videotaped interviews." *People* v. *Isom*, 2005 Colo. App. LEXIS 1955 at *7 (December 1, 2005), interpreting C.R.C.P. § 47 (m).

[19] We observe further that, following its decision in *Taylor*, the Supreme Court of Wyoming clarified that the statutory safeguards applicable to the viewing of the testimonial videotape in *Taylor* did not apply to *nontestimo-*

us *to* any case standing for the proposition that it necessarily is an abuse of discretion for a court, under any circumstances, to allow a jury to view, in its entirety, videotaped testimony or statements of victims of child sexual abuse. At least one court has rejected explicitly such a per se rule. See *State* v. *Michaels*, 264 N.J. Super. 579, 644, 625 A.2d 489 (App. Div. 1993) ("refus[ing] to hold that it is never permissible, at a jury's request during deliberations, to replay a videotape of testimony [of victims of child abuse] in its entirety for the jury, with the defendant present, in open court"), aff'd, 136 N.J. 299, 642 A.2d 1372 (1994).[20]

The defendant concedes that the court adhered to the strictures set forth in *Gould* by supervising the viewing of the videotape in open court. See footnote 16. It also is notable that, unlike in the aforementioned cases, the initial playing of the videotape was not in response to the jury's request, but was invited by the defendant's introduction of selective, misleading excerpts of the videotape as prior inconsistent statements. Finally, the court gave two separate limiting instructions cautioning the jury as to the limited purpose for which it was to consider the videotaped interviews. Under the circumstances, we conclude that there was no abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

---

*nial* exhibits, which, subject to the trial court's discretion, may be taken into the jury room during deliberations. See *Stephens* v. *State*, 774 P.2d 60, 70 (Wyo. 1989). Here, although the defendant characterizes the videotaped interviews of the victims by Melillo-Bush as testimony, strictly speaking, they are not.

[20] Moreover, in a case subsequent to *Binder*, the United States Court of Appeals for the Ninth Circuit clarified that in deciding *Binder*, it "did not establish a per se rule against replaying videotaped testimony." *United States* v. *Sacco*, 869 F.2d 499, 501 (9th Cir. 1989). In *Sacco*, the Ninth Circuit concluded that the trial court properly allowed such a replay where it was done in open court and the videotape was shown in its entirety, factors absent in *Binder*, and, notably, present in this case. See id., 502–503.