## STATE OF CONNECTICUT *v.* EDWARD VINES
### (AC 20224)

Schaller, Dranginis and Daly, Js.

Argued September 26, 2001—officially released August 27, 2002

*Donald D. Dakers*, special public defender, with whom, on the brief, was *Katerina Rohner*, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *James Bernardi*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Edward Vines, appeals from the judgment of conviction of two counts of tampering with a witness in violation of General Statutes § 53a-151 (a).[1] The defendant was also charged with three counts of robbery in the first degree. Because the jury was unable to reach a verdict on those counts, the trial court declared a mistrial. The defendant claims on appeal (1) that the judge improperly absented himself from the courtroom during playback of testimony to the jury, (2) that the court delegated its authority to a clerk and (3) that the court improperly excluded the defendant and defense counsel from the courtroom,

---

[1] General Statutes § 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding."

thereby violating the defendant's rights under the fifth, sixth and fourteenth amendments to the United States constitution. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. On May 11, 1998, the defendant was arrested by the Stamford police and charged with four counts of robbery in the first degree. The state alleged that during the late evening hours of May 10, or the early morning hours of May 11, 1998, the defendant and two others, Curtis Vines and Torok Johnson, robbed at gunpoint Carlos Medina, Damian Addison and Germaine Snell, who had been listening to music on the fire escape of the apartment of one of the victims.

The state further alleged that shortly after that robbery had taken place, the defendant and his accomplices approached their next victim, Darryl Petitt, and took approximately forty dollars and a silver and gold watch from him. At approximately 1:30 a.m. on May 11, 1998, a nurse at Stamford Hospital approached James Stackpole, a Stamford police officer, who was at the hospital for reasons unrelated to this case, and told him that a patient, Petitt, had walked in and stated that he had been robbed in Southfield Village by three armed males. Stackpole interviewed Petitt and broadcast a report of the incident. Shortly thereafter, Stamford police encountered three males changing a tire on a car on the side of the road. The police subsequently arrested the three individuals and transported them to the police station, where Petitt identified the defendant, Curtis Vines and Torok Johnson as the three robbers.

The state subsequently filed an amended information charging the defendant, in addition to the robbery charges, with tampering with witnesses in his trial on the robbery charges. Shortly after the defendant's arrest, Jesse Johnson, Torok Johnson's father, threat-

ened Petitt, stating that if his son went to jail there would be trouble. On May 21, 1999, Richard Coldwell, a sergeant with the Stamford police, testified that on January 26, 1999, he saw Antonio Robinson, also known as "Biggy Smalls," inside the courthouse where Petitt was testifying during the pretrial evidentiary hearing. Coldwell also said that, a few minutes later, he saw Robinson speaking with Petitt as they crossed the street together.

The trial on both the robbery and tampering charges began on May 6, 1999, and concluded on May 24, 1999. Following the completion of evidence and summation, the court charged the jury on the afternoon of May 20, 1999. The jury deliberation lasted three days, beginning on May 20, and continuing on May 21 and 24, 1999. On the first day of deliberations, the jury requested a playback of certain trial testimony.[2] The trial court granted the request and, before excusing itself, described the procedures that the court would follow when the playback occurred. The court first explained the procedures to the attorneys,[3] outside the presence

[2] The jury requested a playback of the testimony of Voula Kouskousoglou, the state's first witness, who had observed the suspects next to their car.

[3] The Court: "We're going to have playbacks. It might be a good idea. . . . During the playback neither counsel is to say a word. The defendant is not to say anything. The jury will be in complete charge. And I'm going to tell them this. If they wish to stop the playback at some point, because they've heard whatever they want to hear, they will notify the clerk, who will be here. And they will stop and leave. If you have some problem, ask that the playback be stopped. We'll excuse the jury, and I'll come out and hear the problem. I have other things I have to do, so I won't be here. But, the clerk will be in charge of the situation here in court.
* * *
"[Assistant State's Attorney]: We've gone through the cross-examination of the two witnesses. We didn't go through [the testimony of Voula] Kouskou-soglou or the directs of the two witnesses.
"The Court: All right.
"[Assistant State's Attorney]: But I don't think that it was me who wanted to make sure there wasn't objections and things like that that were going to get played—
"The Court: Now, if you run across it, just continue playing it. Don't get

of the jury, and then to the jury.[4]

On the second day of deliberations, the jury sent another note to the court requesting the playback of the testimony of Petitt, Officer Michael Mann and Officer Paul Zarodkivwicz. The court granted the request and excused the jury for lunch. Prior to the lunch recess, the court had a brief colloquy with the defendant's

too concerned about that business. And I'll direct the jury that sometimes, if that happens, to ignore it, whatever the answer is. Otherwise, forget the, it's too much of a problem with the thing. We'll have to start typing up transcripts of, all right."

[4] "The Court: Here's the setup that we're going to have. The playback is going to be here, in the courtroom. . . . Counsel and the monitor went over the tape yesterday, with regard to aspects of the cross-examination that might be concerned with the physical description given by Carlos Medina and Damian Addison of the suspects. Because you had asked yesterday for the whole testimony of [Voula] Kouskousoglou, you had asked yesterday, for the direct of Carlos Medina and any descriptions of the three suspects by Carlos Medina. And you had asked yesterday, for the direct of Damian Addison and any description of the suspects by Damian Addison. So, that's what they went over with yesterday. We're doing a playback, rather than having somebody type out transcripts and give them, because that would delay it for several times. And this is not an unusual procedure. You are in complete charge of the situation. These attorneys will say absolutely nothing during the playback. They're here because they want to make sure that everything you need to hear is being heard. . . . If you have some difficulty hearing at some point, or want some, a particular point played back, indicate that. We'll stop the recording, go back over it again, and get to the point where you will, the part that you want to hear replayed again. In other words, you're going to be in complete control of the situation. The clerk will be here to represent the court. I have other assignments that I have to attend to. I think everybody's clear on that. And the process will be, Kouskousoglou will be played first. Then, Carlos Medina's direct testimony will be played, and portions of the cross-examination that might be relevant to the physical description will be played. Now, during the course of the playback, inadvertently we might come to places where a question is asked, an objection is made, and the objection is sustained. . . . [J]ust ignore that part of the thing. We'll try to avoid that problem, if possible, but if you try to play back, these are not state of the art machines, of course. . . . [E]ven when [the court monitor] has recorded the position on the tape it tightens it up, and it doesn't get to the right position again. So, you're going to have to put up with that business. . . . And if you want to stop for conferences, just let us know. All right. . . . I'll be disappearing, and you're in charge."

counsel regarding who would be present in court when it reconvened after lunch. When court reconvened, it instructed the jury on the procedures that it would follow during the playback. The court instructed the jury that, unlike the first playback, the court, the defendant and both counsel would not be present.[5] The defendant apparently agreed with this arrangement.

Following two requests for further instruction on the law, the court granted a third request for the playback of testimony. This third request sought the playback of the defendant's testimony, and this also took place in the presence of only the clerk and the court monitor. At approximately 6 p.m. on May 21, 1999, the court reconvened and determined that the jury had not finished listening to the defendant's testimony. After the jury agreed to continue deliberations at 9:30 a.m. on May 24, 1999, the court repeated the instructions regard-

[5] The court instructed the jury: "What I'm going to do is this, because these playbacks may take some length of time, we've decided to clear out the courtroom and make this the jury room for the time being. So, the only ones who are going to be here, will be the monitor and the clerk of the court, as well as yourselves. So, you'll have complete control of the courtroom. . . . [T]he only conditions are as follows. If you're going to discuss the matters among yourselves, you have to go into the jury room, because the others can't participate in that. . . . Now, there are going to be portions in the playback where you were excused from the courtroom, and I heard arguments and so on. The monitor will be attempting to, because that's not part of what you heard, will be crossing over those things, although some of it might inadvertently skip, because the counters on these old things are not that precise. And they may not always correspond with her files, but she's done the best she can to get that straight. I will be available, and counsel will be available, outside the courtroom. We'll block it, so that nobody can come into the place, so you have, this will be your jury room. The only place you cannot, absolutely cannot come, is up here. . . . All right. That's the ground rules, so you're in complete charge. The sheriff—

"The Sheriff: Do you want me to stay inside or outside, Your Honor?

"The Court: Stay outside, because you've got to keep people from coming in and all of that. All right. Gentlemen, you want to, so that's why the defendant isn't here. And it's because we've already gone through this. Oh, for the record, your client has indicated he, in his agreement, that he would not be present during the playback."

ing the procedure for continuing the playback of testimony in its absence, as well as the explanation for the absence of the defendant and both counsel.[6]

On May 24, 1999, the jury returned for its last day of deliberations. On that day, the jury requested that it be allowed to replay the testimony of Sergeant Nicholas Montagnese.[7] The court repeated its instructions to the jury regarding the playback procedure before clearing the courtroom for the last time.[8] At no point during trial did the defendant object to the absence of the trial judge from the courtroom during the playbacks.

## I

The defendant first claims that the judge abused his discretion in absenting himself during the playback of testimony and that that was reversible error because

---

[6] The court's instructions to the jury included the following: "When you're all assembled, we'll start replaying the tape from whatever position you want. And we'll use this room as the same. So, I'll keep the lawyers out and keep the defendant out during that period. So, our clerk will be in charge. As soon as you're ready to hear the balance of the testimony, then just let the clerk know, and we'll start playing again. And since I have an assignment at another place, I will be a little late. But, if you have any questions or something, I'll be here in time to answer the balance of them. Then, if there's any additional testimony you want heard, let our clerk know, and she'll make arrangements for that with the monitor. . . . [K]eeping the clerks, keeping the defendant out and the attorneys out will save a lot of time at the beginning of the court. So, why don't you come in and treat the whole courtroom like your jury deliberation room. And when you're all here, we'll start the playback."

[7] Montagnese took part in booking the defendant at the police station following his arrest. During the booking process, Montagnese took a ring from the defendant that was later identified as one of the items stolen from Medina during the robbery.

[8] After noting whom the jury wanted to hear on playback, the court then repeated its familiar instructions to the jury, stating: "This will be your deliberation room and you'll have control over when you want to stop the playback and when you want something repeated again, just as you were doing last Friday. So, meanwhile, the defendant's counsel and others besides the monitor and our clerk, will be leaving the courtroom so that you can have this."

it violated the defendant's fifth[9] and sixth[10] amendment rights to due process of law and to a fair trial under the United States constitution. In response, the state argues that the absence of the judge, counsel and the defendant during the playback of testimony is not constitutional error. The state further argues that the judge was within his discretion when he absented himself during the playback of testimony, and, therefore, the absence did not prejudice the defendant so as to deny him a fair trial. Although the defendant presented these claims separately, we will address them as one.

We note at the outset that the defendant argues and the state agrees that the trial judge's absence during the playback of testimony was not "structural error." "Structural errors are fundamental defects in the trial mechanism that affect the entire 'framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Peck* v. *United States*, 106 F.3d 450, 454 (2d Cir. 1997), quoting *Arizona* v. *Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991); see also *State* v. *Anderson*, 255 Conn. 425, 445–46, 773 A.2d 287 (2001) (discussing structural error and listing examples). Rather, defense counsel characterized this issue as "trial error."[11] Although the defen-

[9] The fifth amendment to the United States constitution provides in relevant part: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."

[10] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him . . . ."

[11] In *State* v. *Gould*, 241 Conn. 1, 14–15, 695 A.2d 1022 (1997), our Supreme Court concluded that a trial court's actions in a context similar to the present case did not constitute an abuse of discretion, nor did it mandate plain error review. Practice Book § 60-5. "It is the policy of the law that every tribunal for the trial of civil or criminal causes should have open to it the best legitimate means of acquiring such knowledge of the law and the facts as will enable it to decide the cases before it fairly and intelligently." (Internal quotation marks omitted.) *State* v. *Gould*, supra, 13, quoting *State* v. *Rubaka*, 82 Conn. 59, 67, 72 A. 566 (1909). In *Gould*, where the trial court permitted the jury to review edited video testimony of the state's principal witness unsupervised in the jury room, the court stated that "[s]ince we have allowed

dant claims violations of his constitutional rights to due process and to a fair trial, he correctly points out that his constitutional claim must be reviewed under the standard set out in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[12] because he did not preserve these claims at trial. Because we find that the record is inadequate for our review of this claim, we decline to address the merits of the defendant's claim. See id., 239–40. Thus, we dispose of the defendant's claim under the first prong of *Golding*.

"The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." Id., 240.

The defendant argues that taped testimony "revisits critical testimony, audibly wrought with accusation, nuance, and emotion, which if repeatedly heard by a jury could taint their decision." The defendant further argues that when unsupervised, "the usually highly-charged testimony is replayed with considerably less

transcripts of testimony to be read to the jury, the trial court's actions here did not violate our rules of practice." *State* v. *Gould*, supra, 15.

[12] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . . This court may dispose of the claim on any one of the conditions that the defendant does not meet." (Internal quotation marks omitted.) *State* v. *Jones*, 65 Conn. App. 649, 653, 783 A.2d 511 (2001).

opportunity to keep excluded portions of the testimony and objections from counsel from also being replayed to the jury."[13] The defendant further argues that certain consequences of the judge's absence resulted in a denial of his rights. The defendant admits, however, as he must, that the record before us reveals none of the consequences that the defendant claims occurred as a result of the jury's unsupervised playback of the testimony.[14] While the jury apparently listened to several hours of testimony, no record exists as to what exactly the jury heard or how many times the jury heard it.[15]

[13] The defendant apparently argues that the mere absence of the judge during the playback of testimony constitutes a violation of his rights to due process and to a fair trial. We disagree. Initially, we note that "[w]hile we do not encourage trial judges to absent themselves from the bench . . . and recognize that absence under many circumstances would involve error, practical distinctions must be observed. . . . [T]o say that there are reasons favoring the judge's presence is far short of saying that the judge commits error if he or she is ever absent." (Citation omitted.) *United States* v. *Grant*, 52 F.3d 448, 449 (2d Cir. 1995); see *Turner* v. *Frowein*, 253 Conn. 312, 341, 752 A.2d 955 (2000) ("[d]ecisions of the Second Circuit Court of Appeals, although not binding on us, are particularly persuasive"). Turning to the defendant's argument, we dispose of this aspect of the claim pursuant to prong three of *Golding*. While the record is sufficient to verify the judge's absence, we cannot conclude on this record that a constitutional violation clearly exists.

[14] In his brief, the defendant states: "Admittedly, there is no record as to what occurred in these proceedings and therefore the defendant cannot claim, with certitude, that the jury did have certain portions of the playback testimony repeated." At oral argument, defense counsel stated that "there's absolutely nothing; there's no record at all." Defense counsel stated also that, with regard to the reason for the complete lack of a record: "There's no question there was nothing done at the trial level to alert the trial court to this particular claim."

[15] Over the course of the trial, the jury requested the replay of testimony of Medina, Addison, Kouskousoglou, Petitt, Mann, Zarodkivwicz and Montagnese.

On one occasion, the court instructed that jury: "If you have some difficulty hearing at some point, or want some, a particular point played back, indicate that. We'll stop the recording, go back over it again, and get to . . . the part that you want to hear replayed again." On a second occasion, the court stated: "We've received a note that you want to hear the testimony or playback of Sergeant Nicholas Montagnese, and I assume you want both direct and cross. . . . This will be your deliberation room, and you'll have

The defendant's concern that the jury may have communicated with the clerk is equally without substantiation.[16]

In response to a specific query from this court as to any efforts that the defendant may have made to satisfy his burden to create a record of the trial, the defense admits that there was no objection to the trial judge's absence.[17] Additionally, the defendant made no posttrial attack on the verdict.[18] Any effort to reconstruct the record at this point would be futile. As a result, we cannot discern whether a colorable claim exists.[19] See

control over when you want to stop the playback and when you want something repeated again just as you were doing last Friday." Thus, the record reveals that the court twice instructed the jurors that they would be permitted to rehear certain requested testimony. This alone, of course, does not constitute an adequate record for us to determine whether the defendant suffered violations of his constitutional rights as a result of speculated jury activity.

[16] The playback of testimony in this case took place under two different circumstances. The first request for a playback took place in the courtroom in the presence of counsel and the defendant, but without the presence of the judge. The subsequent playbacks occurred in the absence of the judge, the defendant and counsel. Prior to these subsequent playbacks, the judge made a statement indicating that he intended to convert the courtroom into the jury deliberation room. He then instructed the jurors not to talk to the clerk or monitor, and that they were to return to their deliberation room if they wanted to discuss the testimony. Thus, while the record is devoid of any record of communication between the jury and the clerk or the monitor, the court did go on record and instruct the jury *not* to do so.

[17] At oral argument before this court, we engaged in the following colloquy with defense counsel:

"The Court: Is it fair to say that there's no objection on the record?

"[Defense Counsel]: It is fair to say that."

[18] The following colloquy transpired at oral argument before this court:

"The Court: Trial counsel didn't move for a postjudgment hearing to either set aside the verdict or for a judgment of acquittal notwithstanding the verdict. I mean, there was no postverdict attack at the procedure. The only time that the trial court has any indication that this is the claim of error is when the . . . preliminary statement of issues is attached to the appeal.

"[Defense Counsel]: I grant you that."

[19] On April 3, 2000, counsel for the defendant filed with this court a motion for extension of time within which to file motions for articulation and rectification. Counsel stated that additional time was necessary to review

*State* v. *Talton*, 63 Conn. App. 851, 861, 779 A.2d 166, cert. denied, 258 Conn. 907, 782 A.2d 1250 (2001).

The defendant argues that his failure to object immediately at trial or to make some other postverdict attack on the judgment does not invalidate the issues on appeal. We disagree. We are bound to address the unpreserved claim of constitutional error according to the well established *Golding* standard of review. For the reasons set forth previously, the defendant cannot satisfy the minimum requirements for review under this standard. In light of the inadequate record, we decline to review the defendant's claim.

We do not ignore the defendant's concerns regarding the risks in permitting the unsupervised playback of testimony. Indeed, the trial court acknowledged and addressed some of the inherent risks present in the unsupervised playback in its instructions to the jury prior to the first playback of testimony. When the prosecutor raised the potential for objections and "things like that" getting replayed, the court told him not to "get too concerned about that business. And I'll direct the jury that sometimes, if that happens, to ignore it, whatever the answer is." The court then instructed the jury that "during the course of the playback, inadvertently we might come to places where a question is asked, an objection is made, and the objection is sustained. That, where the objection is sustained, just ignore that part of the thing." See footnote 4. Prior to the second playback, the court further instructed the jury that "there are going to be portions in the playback where you were excused from the courtroom, and I heard arguments and so on. The monitor will be attempting to—because that's not part of what you

the case "to make an informed decision on whether to file motions for articulation or rectification." Although this court granted the extension, a thorough review of the record reveals that the defendant did not file a motion for articulation.

heard—will be crossing over those things, although some of it might inadvertently skip, because the counters on these old things are not that precise." See footnote 5.

In light of the clear potential for these risks to mature into actual harm, and the relative ease with which the risks can be alleviated, we note our disapproval of a trial judge's absenting himself from the courtroom during the playback of audiotaped testimony. The playback of testimony should be supervised by the trial court. Rather than exercising our supervisory powers to mandate supervised playbacks of taped testimony in the future; see *State* v. *Lisevick*, 65 Conn. App. 493, 502, 783 A.2d 73 (declining to exercise supervisory authority to require child interrogations to be videotaped where defendant pointed merely to possibility of taint and court found no evidence in record to support it), cert. denied, 258 Conn. 933, 785 A.2d 230 (2001); we will review such occurrences in the future on a case-by-case basis.

## II

The defendant next claims that the court improperly delegated its judicial authority to the clerk during the criminal proceedings. Specifically, the defendant claims that the court delegated its authority in the courtroom to the clerk during a deliberative portion of the trial. In so doing, the defendant argues that the court ignored the procedure mandated in Practice Book § 42-26.[20] Thus, the defendant claims that the court's choice of trial procedure violated his rights under the sixth and fourteenth amendments. This claim is without merit.

We review this claim that the trial court wrongfully abdicated its authority under the *Golding* standard of

[20] Practice Book § 42-26 provides: "If the jury after retiring for deliberations request a review of certain testimony, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the judicial authority, after notice to and consultation with the prosecuting authority and counsel for the defense, shall have the requested parts of the testimony read to the jury."

review because the defendant did not preserve this claim at trial. Because we conclude that the record is adequate for our review of this claim and that the claim is of constitutional magnitude alleging the violation of a fundamental right; see *State* v. *Golding*, supra, 213 Conn. 239–40; we will review this claim. Because we find that the court did not delegate its authority to the clerk, however, we conclude that no constitutional violation clearly exists. The defendant therefore fails to satisfy the third prong of *Golding* review.

The record reveals that the court did not delegate its judicial authority to the clerk. Although the defendant cites one small portion of the court's instructions to the jury that, if read in isolation, might appear to support this strained reading,[21] we conclude that this is not a fair interpretation of the court's instructions. In fact, the court instructed the clerk in the presence of counsel and the jury that "if there's any dispute, just excuse the jury, and I'll come out and hear what these attorneys have to say." In light of our careful review of the record, we conclude that the court did not delegate its judicial authority to the clerk.[22] Rather, the court merely asked

---

[21] The defendant contends that the court "[gave the jury] 'complete control of the courtroom (with) the clerk in charge of the situation here in court.' "

[22] The defendant also claims that the court ignored or misunderstood Practice Book § 42-26, in that because the playbacks would take time, the court "clear[ed] the courtroom for the exclusive use of the jurors during the playbacks of testimony." The defendant argues that "[w]hile Practice Book § 42-26 requires the jury to be brought to the courtroom for review of testimony, nowhere in this section or any other sections is there a requirement, recommendation or even suggestion that the judge, parties and counselor are exempt from this proceeding, and that the clerk of the court assume authority of the courtroom."

As we noted previously, the clerk did not assume authority of the courtroom. Further, the defendant misstates the record of the actual proceedings. During the first playback, the court excluded neither counsel nor the defendant from the proceeding. During the subsequent playbacks, the court excluded counsel and the defendant, without objection and apparently pursuant to an agreement motivated at least in part by the parties' recognition of logistical difficulties in coordinating the jury's and the defendant's differing lunch schedules. Another apparent motivation for the court's choice of

the clerk to excuse the jury and to request that the court and the attorneys return if any questions arose.

## III

The defendant next claims that the court, in conducting the playback of testimony in the defendant's absence, deprived him of his constitutional rights under the fifth, sixth and fourteenth amendments to the United States constitution. Specifically, the defendant argues that the court failed to make a specific finding that he knowingly and voluntarily waived his right to be present. The defendant argues that pursuant to common law and the sixth amendment's confrontation clause, he was entitled to be present at all stages of his trial, and his absence during the playback of testimony denied him the fair trial guaranteed to him by the fifth amendment, made applicable to the states by the fourteenth amendment. We are not persuaded.

We review this claim that the trial court wrongfully excluded the defendant from the playback of the testimony under the *Golding* standard of review because, again, the defendant did not preserve this claim at trial. We find, however, that the defendant waived his right to be present during the playback and conclude that the alleged constitutional violation did not clearly deprive the defendant of a fair trial. The defendant therefore fails to satisfy the third prong of *Golding* review.

The following additional facts are relevant to our disposition of this claim. Prior to the lunch recess on May 21, 1999, the court had the following colloquy with

procedure was its concern with time. The court implied at one point that the time it takes to go through the record searching for objections and other matter to omit prior to the playback would defeat the purpose in choosing the playback over transcription services in the first place.

We conclude that the defendant's claim that the court ignored or misunderstood Practice Book § 42-26 is without merit.

the defendant's counsel regarding who would be present in court when it reconvened after lunch:

"The Court: All right, [defense counsel]?

"[Defense Counsel]: Yes, sir?

"The Court: Have you discussed with your client the alternatives?

"[Defense Counsel]: I have not. May I do so now?

"The Court: Well, you can do it. We'll stand in recess."

Upon reconvening, the court discussed the new playback procedures. The court instructed the jury that, unlike the first playback when only the court was absent, during the next playback the court, the defendant and both counsel would not be present. The defendant apparently agreed with this arrangement; the court stated in the presence of the jury that "[f]or the record, your client has indicated he, in his agreement, that he would not be present during the playback."[23]

---

[23] The Court: "What I'm going to do is this, because these playbacks may take some length of time, *we've decided* to clear out the courtroom and make this the jury room for the time being. So, the only ones who are going to be here will be the monitor and the clerk of the court as well as yourselves.
* * *
"Gentlemen, you want to, so that's why the defendant isn't here. And it's because we've already gone through this. Oh, *for the record, your client has indicated he, in his agreement, that he would not be present during the playback.*" (Emphasis added.)

In a footnote in the defendant's appellate brief, the defendant notes: "It would appear, based upon the court's later actions of keeping both the parties and the defendant out of the courtroom during the subsequent playbacks, that there was an off the record discussion between the court and the attorneys, which was further discussed with the defendant, that not only the court but that the defendant and the attorneys would be absent during any subsequent playbacks. Unfortunately, there is nothing on the record as to the gist of this discussion and the defendant's position regarding it. *Presumably, he acquiesced in this procedure, since neither he nor his attorney were present during any of the subsequent playbacks.*" (Emphasis added.)

"It has long been settled that an accused enjoys a right both at common law and pursuant to the sixth amendment's confrontation clause to be present at all stages of trial. . . . It is also well settled that under the due process clauses of the fifth and fourteenth amendments a defendant must be allowed to be present at his trial to the extent that a fair and just hearing would be thwarted by his absence." (Citations omitted.) *United States* v. *Fontanez*, 878 F.2d 33, 35 (2d Cir. 1989). Nevertheless, the defendant's presence is not required when the right is waived. Waiver in this context is addressed both in our rules of practice and in our case law.

Under our rules of practice, the trial court in its discretion may exclude the defendant if it determines that the defendant waived his right to be present or if the defendant's absence is justified due to his or her conduct. Practice Book § 44-8 provides in relevant part: "The defendant must be present at the trial and at the sentencing hearing, but, if the defendant will be represented by counsel at the trial or sentencing hearing, the judicial authority may: (1) Excuse the defendant from being present at the trial or a part thereof or the sentencing hearing if the defendant waives the right to be present; (2) Direct that the trial or a part thereof or the sentencing hearing be conducted in the defendant's absence if the judicial authority determines that the defendant waived the right to be present . . . ."

Relevant cases instruct that "[a] defendant in a criminal prosecution may waive one or more of his or her fundamental rights. . . . In [*State* v.] *Patterson*, [230 Conn. 385, 396, 645 A.2d 535 (1994)], our Supreme Court stated that [i]n some circumstances, a waiver of rights must be knowing, voluntary and intelligent, and it must be expressly made. . . . In other circumstances, waiver can be implied. . . . Our Supreme Court has . . . held that a defendant may waive his constitutional

right to be present during trial merely by an unexplained absence. *State* v. *Simino*, 200 Conn. 113, 125–30, 509 A.2d 1039 (1986)." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooper*, 38 Conn. App. 661, 669, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996).

In discussing the circumstances in which a valid waiver might be present, our Supreme Court noted that "[w]hether there has been an intelligent and competent waiver of the right to presence must depend, in each case, upon the particular facts and circumstances surrounding that case. *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 [1938]. . . . [A] waiver of the right to be present at a criminal trial may be inferred from certain conduct engaged in by the defendant after the trial has commenced." (Citation omitted; internal quotation marks omitted.) *State* v. *Simino*, supra, 200 Conn. 129.

Turning to the facts of this case, we note initially that contrary to the defendant's assertion that there is nothing on the record as to the essence of the discussion regarding his absence during the playback of testimony and his position regarding it, the court in fact stated that "[f]or the record, your client has indicated he, in his agreement, that he would not be present during the playback." See footnote 25. The essence of the discussion, and the defendant's position regarding it, are, in fact, on the record.

On the basis of the record before us, we cannot agree with the defendant that the record is silent as to whether he waived his right to be present during the playback portion of his trial. Rather, we conclude, on the basis of the court's statement on the record and the implication in the defendant's brief, that the defendant "acquiesced in this procedure"; see footnote 23; thereby

waiving his right to be present during this stage of his trial. The record in this case is adequate to support the conclusion that the defendant waived his right to be present at the playback on May 21, 1999.[24] Because the defendant waived his right to be present for the playback of the testimony at trial, we conclude that the defendant has failed to demonstrate that the alleged constitutional violation clearly deprived him of a fair trial.[25] Therefore, the defendant has failed to satisfy his burden pursuant to the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[24] The defendant argues that his agreement to be absent from the playbacks of the testimony of Petitt, Mann and Zarodkivwicz did not constitute consent or waiver as to his absence from the subsequent playbacks. We disagree. On the basis of our conclusion that the defendant waived his right to be present as to these playbacks and his continued absence from the subsequent playbacks without objection, we conclude that the defendant waived his right to be present at these latter playbacks. Cf. *State* v. *Simino*, supra, 200 Conn. 131–32. "A defendant is constitutionally guaranteed only the right to have the opportunity to be present at all stages of his trial"; id.; and where the defendant who was free on bail had been present at a prior proceeding but was absent at a later proceeding without explanation, waiver may be inferred.

[25] The defendant also claims that the court improperly excluded defense counsel from the playback. Again, we disagree and note that defense counsel also apparently consented to being absent from the playbacks. Shortly before recess on May 21, 1999, the jury completed playbacks of the previously requested testimony and submitted to the court another request. The defendant already had been brought to another location for lunch. The court proposed to explain the defendant's absence and asked defense counsel if there was "any objection to that." Defense counsel answered that "I don't have an objection for that, Judge, but I may have problem from my client. I've already had a problem with him this morning."

Defense counsel then suggested: "Can, maybe, can we solve this possibly, Judge, by myself and [the assistant state's attorney] being out of the courtroom? And this way he won't be here and you, are you, is the purpose that you're just going to excuse them for lunch at this point?" The following colloquy between the court, counsel and the sheriff even more clearly supports our conclusion that the court did not improperly exclude defense counsel from the subsequent playbacks.

"[Defense Counsel]: Would you have a problem if we were out of the courtroom?

"The Court: Hello? What's your position?

"[Assistant State's Attorney]: Yeah. I'm not exactly sure what, you want us out of the courtroom to make—

"The Court: No. I would prefer everybody be in the courtroom. We can't have everybody at the present time because the state of Connecticut can't afford enough sheriffs to bring the defendant over. But, that's beyond my control. I don't want to keep the jury here until the sheriffs get around to being able to have enough people to bring him over.

"[Assistant State's Attorney]: Okay.

"The Court: My suggestion was, that we explain to the jury that he was brought back for lunch. Because they know he's incarcerated.

"[Assistant State's Attorney]: Okay.

"The Court: But counselor has a problem, because he doesn't want to agree to that, because his client may object to it.

"[Assistant State's Attorney]: Okay.

"The Court: So, he gave an alternative that the two of you leave, and the, just here, because all I'm going to . . . ."

The court then realized that the sheriffs planned to bring the defendant back to court, and the arrangements previously attempted proved unnecessary, at least at that point. Accordingly, the court, in the presence of counsel and the defendant, dismissed the jury for lunch. Following this, the court again addressed defense counsel:

"The Court: Have you discussed with your client the alternatives?

"[Defense Counsel]: I have not. May I do so right now?

"The Court: Well, you can do it. We'll stand in recess."

The court reconvened after lunch and addressed the jury as follows, making specific reference to the fact that counsel would be absent and that pursuant to an agreement, presumably made in chambers, the defendant would be absent as well:

"The Court: You may be seated. . . . What I'm going to do is this, because these playbacks may take some length of time, we've decided to clear out the courtroom and make this the jury room for the time being. So, the only ones who are going to be here, will be the monitor and the clerk of the court, as well as yourselves. . . . I will be available, and counsel will be available outside the courtroom. . . .

"The Sheriff: Do you want me to stay inside or outside, Your Honor?

"The Court: Stay outside, because you've got to keep people from coming in and all of that. All right. Gentlemen, you want to, so that's why the defendant isn't here. And it's because we've already gone through this. Oh, for the record, your client has indicated he, in his agreement, that he would not be present during the playback."

As defense counsel conceded at oral argument before this court, there is no objection on the record. Rather, the record discloses that counsel actively participated in structuring the playback portion of the trial to exclude himself as well as the defendant.