******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# STATE OF CONNECTICUT *v.* TYWAN EDWARDS
## (AC 42327)

Lavine, Alexander and Flynn, Js.*

*Syllabus*

Convicted, after a jury trial, of the crime of larceny in the second degree, the defendant appealed to this court. The defendant's conviction stemmed from his alleged reception of stolen property in the form of one Rolex watch, taken from the victims, D and S, during a break-in of their home by the defendant's brother. During the break-in, three Rolex watches were stolen, valued by D at $11,000, $5000 and $16,000. Over the defendant's objection, the trial court admitted a portion of a police detective's testimony regarding a surveillance video that showed the defendant, in a business that provided jewelry appraisals, in possession of one of the Rolex watches. The defendant claimed, inter alia, that the evidence was insufficient to support a finding that the value of the watch in his possession was more than $10,000 or that he knew the watch was stolen as required by statute (§ 53a-123). *Held*:

1. The evidence was sufficient to support the defendant's conviction of larceny in the second degree:

    a. There was sufficient evidence that the value of the property was more than $10,000 as required by § 53a-123 (a) (2): although D testified that one of the stolen watches had been worth only $5000, his description of that watch did not include diamonds, and D testified that the watch seen with the defendant in the surveillance video was his diamond Rolex, recognizable by its dial and condition, which he had valued at $16,000, a clerk on the surveillance video examined the watch and confirmed the authenticity of diamonds on it to be genuine, and the jury was entitled to weigh the credibility of conflicting evidence that S had valued all three watches below $10,000, and, thus, the jury could have found that the defendant possessed the $16,000 watch; moreover, the state established that D owned the watch and D's testimony as to the value of his watch was sufficient to put the question of value before the jury, which was entitled to weigh that evidence in finding the value of the property.

    b. Sufficient evidence existed for the jury to find that the defendant knew the property was stolen; the jury's decision to find the defendant not guilty of various other crimes with which he had been charged by the state did not preclude the inference that the defendant likely knew the property was stolen, as there was testimony that the watch the defendant possessed days after the break-in was stolen, the defendant made inconsistent statements to the police as to how he had obtained the watch, there was evidence that the defendant's brother had been identified by the victims as a suspect in the break-in, had been connected to the stolen watches and had been found in possession of D's stolen documents, and the defendant made an unsolicited reference to the police regarding identifications of the suspects made through Facebook that suggested the defendant was aware of the circumstances of the break-in.

2. The defendant could not prevail on his claim that the trial court erred in admitting evidence of the police detective's testimony regarding the surveillance video over his objection, even if improper, as he failed to show that the admission caused him harm; the challenged testimony was cumulative of D's testimony in which he identified the Rolex as his from the surveillance video, which the defendant did not challenge.

3. The trial court did not abuse its discretion in excluding certain impeachment evidence by prohibiting the defendant from cross-examining S on the topic of her drug related arrest subsequent to the break-in: S testified that she had a criminal history and had sold drugs from her home but that she stopped selling pills after the break-in, and the court denied defense counsel's request to cross-examine S regarding the underlying facts of her arrest months after the break-in during which she had been found with a large quantity of cash and pills on her person, as she was ultimately convicted of illegal storage, not sale, of narcotics, that

conviction did not tend to prove that she had lied about ceasing to sell controlled substances, and impeaching S on this issue would be an overly speculative collateral inquiry requiring impermissible extrinsic evidence; moreover, the court gave the defendant wide latitude to impeach S through other means.

4. The defendant's claim that the trial court committed structural error by using a certain phrase in its jury instruction concerning reasonable doubt was unavailing; our Supreme Court repeatedly has upheld the use of instructions employing the very language challenged by the defendant, and this court, as an intermediate appellate court, was bound by that controlling precedent.

Argued September 21, 2020—officially released January 26, 2021

*Procedural History*

Substitute information charging the defendant with the crimes of burglary in the first degree, robbery in the first degree, conspiracy to commit larceny in the first degree, assault in the second degree and larceny in the second degree, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, and tried to the jury before *B. Fischer, J.*; verdict of guilty of larceny in the second degree; thereafter, the court, *B. Fischer, J.*, denied the defendant's motion for a judgment of acquittal and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Jeremiah Donovan*, assigned counsel, for the appellant (defendant).

*Nancy L. Walker*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Karen M. Roberg*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Tywan Edwards, appeals from the judgment of conviction, rendered after a trial to a jury, of larceny in the second degree in violation of General Statutes § 53a-123 (a) (2). On appeal, the defendant claims that (1) the evidence was insufficient to convict him of larceny in the second degree because the jury could not reasonably have found that (a) he possessed stolen property of a value greater than $10,000 or (b) he knew the property in his possession was stolen, (2) the trial court improperly admitted into evidence the testimony that the victim had identified items in a video exhibit as his, in violation of the rule against hearsay, (3) the trial court improperly prevented the defendant from cross-examining a witness concerning her alleged drug dealing subsequent to the crime with which he was charged, and (4) the trial court erroneously instructed the jury concerning reasonable doubt. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, are relevant to this appeal. Samantha Frank (Samantha)[1] generated income by working from her New Haven home as a psychic and by illegally selling pills for which a prescription was required. One of her customers was Dijon Edwards, the wife of the defendant's brother, Terrance Edwards. On January 20, 2017, Dijon Edwards, accompanied by a man named Marcel, purchased pills from Samantha.[2] Later that night, two men broke into the Franks' home, disturbing Samantha, her husband David Frank (David), and two relatives who were staying with them. One of the men wore a mask covering the lower portion of his face. The intruders threatened them at knifepoint and stabbed David in the arm. The men took Samantha's purse and David's wallet and left. The purse contained car keys, jewelry, and, notably, three expensive watches: a Rolex Daytona watch and two Rolex Datejust watches, which are at the center of this appeal.

The Franks (victims) called the police, and David went to the hospital. The victims later spoke to Detectives Kealyn Nivakoff and her partner, members of the New Haven Police Department. The victims gave statements and identified the defendant and his brother as the intruders.

The police undertook surveillance of Terrance Edwards' residence. On January 23, 2017, Nivakoff interviewed Terrance Edwards and Dijon Edwards. At the conclusion of Terrance Edwards' interview, Nivakoff searched his wallet and found a driver's license and Social Security card belonging to David. The police made contact with the defendant that day, at which time they searched him with his consent and found a business card from the American Diamond Exchange on his person. The police subsequently searched Ter-

rance Edwards' residence and recovered jewelry and a Rolex Daytona. The victims identified the items the police found in the residence as theirs, which they had last seen on the night of the break-in. A search of Dijon Edwards' phone revealed a photograph of a Rolex watch. When David was shown a printout of the photograph from Dijon Edwards' phone, he identified his stolen property, writing "Yes, that's my [Rolex] Daytona watch 5-16-18" on the photograph.

Nivakoff went to the American Diamond Exchange and spoke to a clerk, Kathleen Kirker, who had interacted with the defendant. Nivakoff viewed a surveillance video of the defendant's visit. The video depicted the defendant showing Rolex watches to Kirker and asking about an appraisal to establish the value of one of the watches and to confirm the authenticity of the diamonds on it.

An arrest warrant for the defendant was issued in February, 2017. The defendant was located in Arizona and arrested in November, 2017. He was charged with burglary in the first degree, robbery in the first degree, conspiracy to commit larceny in the first degree, assault in the second degree, and larceny in the second degree.

At trial, the state offered the photograph of the Daytona watch found in Dijon Edwards' phone into evidence. The defendant did not object. David identified the handwriting on the photograph as his own and again identified the Daytona watch in the photograph as his. The Daytona watch itself was admitted into evidence. In his testimony, David also identified one of the watches in the American Diamond Exchange surveillance video as his Rolex Datejust. Neither of the two stolen Datejust watches was recovered by the police.

On June 19, 2018, the jury found the defendant guilty of larceny in the second degree by receiving stolen property, but found the defendant not guilty of the other charges. The court accepted the jury's verdict and imposed a total effective sentence of eight years of incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the state presented insufficient evidence to prove beyond a reasonable doubt that the value of the stolen property in his possession exceeded $10,000, or that he knew that one of the watches in his possession had been stolen. We disagree.

The standard of review for such claims is well established. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative

force of the evidence established guilt beyond a reasonable doubt. . . . We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Williams*, 200 Conn. App. 427, 447, 238 A.3d 797, cert. denied, 335 Conn. 974, 240 A.3d 676 (2020).

The following additional facts inform our analysis. On the afternoon before the break-in, Samantha sold Percocet pills to Dijon Edwards. Marcel was present during the transaction. In order to complete the transaction, Samantha retrieved the pills from her purse, and while she did this, the contents of her purse were visible to Dijon Edwards and Marcel. During the break-in that night, the intruders threatened the victims with knives, yelling, "Where's the purse?" The intruders ultimately departed with Samantha's purse. Following the break-in, she told police that her purse contained three Rolex watches valued at $6000, $4000, and $8500.

Samantha suspected one of the intruders was related to Dijon Edwards. Dijon Edwards was a frequent customer of Samantha, and Dijon's husband, Terrance Edwards, had sold Samantha cocaine in the past. The day after the break-in, the victims contacted Marcel in the hope that he could provide more information about the intruders. Marcel shared with the victims several Facebook photographs of individuals whom he believed may have been involved in the break-in. These Facebook photographs depicted the defendant and his brother. Believing the individuals in the Facebook photographs were the intruders, the victims shared their suspicions with Nivakoff on January 22, 2017. The victims went to the police department to give statements, at which time they were shown photographic arrays. Both victims identified the defendant and his brother Terrance Edwards as the intruders from their recollection of the event.

The police detained the defendant near his brother's residence. The police found a business card from American Diamond Exchange on the defendant's person. On the business card were the words "Rolex Watch Appraisal $250 Call for Apt." Nivakoff interviewed the defendant after the police detained him. The defendant stated to her that he was not on good terms with his brother but planned to meet him for drinks that day.

The defendant explained to Nivakoff that he had acquired the American Diamond Exchange card during a visit to the store concerning a Michael Kors watch he was wearing. When speaking to Nivakoff, the defendant also made a vague reference to "people being able to identify people from Facebook," which Nivakoff found odd.[3]

Nivakoff visited American Diamond Exchange and obtained an audiovisual surveillance video depicting the defendant and another man entering the store.[4] The second man handed the defendant two watches, which he handed to the clerk, Kirker. One of the watches had a broken band and was referred to by the defendant as a Rolex. The other watch contained what appeared to be diamonds. The defendant stated to Kirker that his Rolex was broken. Kirker responded that David Schnee, another employee, might be able to look at it when he was in, as he was the "only one who knows about Rolexes." The defendant then asked her if the store had a diamond checker, showing her the second watch. He indicated that he wanted to make sure the diamonds were real, commenting that there were a lot of diamonds on the watch. Kirker took the watch into a back room to look at the diamonds. When she emerged, she and the defendant discussed appraising the watch's value. She asked the defendant if he planned to sell the watch, to which he replied in the negative. He asked her if she had tested all the diamonds, and she assured him that the ones she had looked at were definitely real. She gave the defendant a card and stated that the fee for "the Rolex watch appraisal [would be] $250" and he needed to call for an appointment. The police did not recover either of the watches depicted in the video.

Following his November, 2017 arrest in Arizona, the defendant gave a statement to Nivakoff in which he stated that his brother Terrance Edwards had given him a Rolex watch in payment of a debt and that he had taken it to American Diamond Exchange for appraisal. This statement contradicted his previous statement in which he had stated that he had obtained the American Diamond Exchange card with respect to a Michael Kors watch appraisal.

In a long form information, the state charged the defendant with, inter alia, larceny in the second degree and charged that "at the city of New Haven, on or about January 23, 2017, at approximately 3:45 p.m., in the area of 1280 Whalley Avenue [American Diamond Exchange], the said [defendant] received or retained stolen property knowing that it had probably been stolen or believing that it had probably been stolen, and the value of the property exceeded [$10,000], said conduct being in violation of sections 53a-119 (8) and 53a-123 (a) (2) of the Connecticut General Statutes."

At trial, Schnee testified that American Diamond

Exchange provided "jewelry appraisals" on Rolex watches to determine valuation. According to Schnee, Rolex watches are a particularly desirable brand of watch, and the presence of gems on a watch increases the value "depending on the quality." He confirmed that the handwriting on the American Diamond Exchange card was Kirker's. David testified that in the video he recognized "one of my watches, the—the diamond Datejust. Or the Datejust, yes, one of the Rolex watches." He recognized it "by the video and knowing that it's—it was mine." When asked if there was anything particular about it that he observed, he referenced the condition and the dial.

David also testified as to the value of the watches. According to him, the watches in Samantha's purse were a Rolex Daytona worth $11,000, a Rolex Datejust worth $5000, and a second Rolex Datejust worth $16,000. He described the first Datejust watch, valued at $5000, as "a black—one had black face, oyster perpetual and oyster band, late 80's model . . . stainless." As for the second Rolex Datejust, it was worth $16,000, but David did not describe it in detail.

The defendant moved for a judgment of acquittal at the close of the state's case-in-chief and following closing arguments. The court denied both motions. After the court charged the jury, the jury returned a verdict of guilty of the charge of larceny in the second degree.

The defendant filed a written motion for a judgment of acquittal on July 9, 2018, in which he argued that there was insufficient evidence to conclude that he "knew that the watches he displayed at [American] Diamond Exchange were stolen or probably had been stolen," and that there was insufficient evidence to conclude either that (a) property meeting the statutory value of $10,000 was identified, or (b) David's testimony concerning value was sufficiently reliable. The court denied the motion.

A

The defendant first claims that there was insufficient evidence as to the value of the watches to support his conviction. Section 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ." The defendant's first claim of insufficiency of the evidence challenges the second element, that the value of the property exceeded $10,000. He raises two points. First, in charging him with larceny by possession of stolen property at American Diamond Exchange, the state relied on David's identification of one of the two watches in the surveillance video as one of the stolen watches. He argues that because David identified only a single Datejust, the jury lacked sufficient evidence from which it

could have determined that David was referring to the Rolex Datejust watch worth $16,000, as opposed to the Rolex Datejust watch worth only $5000. Consequently, he contends that the jury lacked sufficient evidence to find that he possessed stolen property worth more than $10,000. Second, he argues that, even if the jury concluded David had identified the watch in the video as the $16,000 watch, the jury could not find the value of that watch to be $16,000 solely on the basis of David's testimony. We reject both claims.

1

With respect to the defendant's claim that the jury could not have determined beyond a reasonable doubt which of the two watches David identified in the video, we conclude that there was sufficient evidence from which the jury reasonably could have found that David identified a watch worth more than $10,000.

In his testimony, David identified his diamond Rolex Datejust in the video.[5] He stated that he recognized the watch "by the video and knowing that it's . . . mine," and explained that he had observed the watch's "dial" and "condition" in the video. When describing the items stolen from him, David testified that the $5000 Datejust watch was stainless with a black face and oyster band, but he did not reference diamonds. By contrast, the watch that Kirker looked at in the back room had "a lot of diamonds" on it. The jury thus could have drawn the inference that the "diamond Datejust" David identified was not the $5000 watch with the black face and oyster band, but the more expensive $16,000 watch.[6] Additionally, Schnee testified that diamonds will increase the value of a Rolex watch. The jury had a basis to infer that the watch David identified was the more expensive of the two given that it had "a lot of diamonds," some of which Kirker had examined and confirmed to be genuine, while the other was not described as containing diamonds. "[A] jury may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Rhodes*, Conn , , A.3d (2020).

The defendant points out that Samantha told the police that her purse contained Rolex watches with values of $6000, $4000, and $8500—values below $10,000. This, however, goes to the weight and credibility of the evidence, not its sufficiency. "When there is conflicting evidence . . . it is the exclusive province of the . . . trier of fact, to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case . . . ." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 200 Conn. App. 448. Giving the evidence the most

favorable construction toward sustaining the jury's verdict, we conclude that the evidence was sufficient for the jury to find that David identified the $16,000 Rolex watch.

2

The defendant next contends that, even if the evidence was sufficient to conclude beyond a reasonable doubt that David identified a watch with a value exceeding $10,000, his testimony alone was insufficient for the jury to find the value of the watch. He argues that David's single sentence testimony that the watch was worth $16,000 was insufficient to satisfy the statutory value element because "there was no evidence by an appraiser, by a seller of similar items, by an independent owner or collector of Datejusts . . . no documentary evidence: no catalogues, invoices, Internet searches, price tags. . . . [David] gave no background information concerning his acquisition of the Datejusts . . . . Nor did he provide any basis for his belief as to how much they were 'worth'—or even what he meant by 'worth.' " The defendant reasons that it is not clear that David was referring to the "market value" of the watch at that time.[7] The defendant's claim fails.

"The determination of value is a question for the trier of fact." *State* v. *Collette*, 199 Conn. 308, 314, 507 A.2d 99 (1986). "A reviewing court will not disturb the trier's determination if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Felder*, 95 Conn. App. 248, 261, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006).

"Under the law in Connecticut, it is well settled that an owner may testify as to the value of his or her property." *State* v. *Sherman*, 127 Conn. App. 377, 393, 13 A.3d 1138 (2011), cert. denied, 330 Conn. 936, 195 A.3d 385 (2018). In *Sherman,* this court explained that "[a]n owner may estimate the worth of his or her property, and the jury must consider the weight of the owner's testimony. . . . The state does not need to prove the value of property with exactitude. . . . The state is required only to lay a foundation which will enable the trier [of fact] to make a fair and reasonable estimate. . . . Whether an owner's testimony as to the . . . value provides sufficient information to support a jury verdict depends on the circumstances of each case." (Citations omitted; internal quotation marks omitted.) Id.

The defendant attempts to distinguish *Sherman* by pointing out that in that case the owner testified as to "value," not "worth," and the jury could examine the stolen jewelry itself as an exhibit, while here, the Datej-

usts were not in evidence.[8] As the state correctly points out, "value" and "worth" are typically synonymous terms in our case law. See *State* v. *Sherman*, supra, 127 Conn. App. 393 (using terms interchangeably). The state is also correct that the owner's testimony is sufficient and the property need not be available for the jury to inspect. In *Sherman*, this court rejected the claim that "any testimony provided by the owner regarding the value of his or her property is incompetent unless the state also provides some sort of factual foundation in support of the testimony." Id.

On the contrary, the owner's testimony on its own may be considered by the trier of fact. Our Supreme Court has ruled that "the competence of the witness to testify to the value of property may be established by demonstrating that the witness owns the property in question." *State* v. *Baker*, 182 Conn. 52, 60, 437 A.2d 843 (1980); see also *State* v. *Felder*, supra, 95 Conn. App. 262 ("[the victim's] testimony with regard to the value of his vehicle was sufficient to satisfy the statutory element that the value of the motor vehicle was in excess of $10,000, and [the victim] was competent to testify as to the value of his property"). Here, the state established that David owned the watch. His testimony was sufficient to put the question of value before the jury, and the jury was entitled to weigh that evidence accordingly.

B

The defendant next argues that whatever the value of the watches may have been, there was insufficient evidence to establish beyond a reasonable doubt that he actually knew either one of the watches in his possession at American Diamond Exchange was stolen. He argues that the jury's finding of not guilty of four of the counts with which he was charged established that he was not one of the intruders, that there was no evidence that he knew of the break-in, that he could assume his brother had received the watch in exchange for controlled substances consistent with his account to Nivakoff, and that his conduct at American Diamond Exchange was consistent with honest activity. We do not agree.

General Statutes § 53a-119 defines larceny by receiving stolen property in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . . (8) Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. . . ." The defendant disputes the sufficiency of the evi-

dence to establish the statutory knowledge element.

The jury's decision to find the defendant not guilty of four of the counts, charging burglary in the first degree, robbery in the first degree, conspiracy to commit larceny in the first degree, and assault in the second degree, does not preclude an inference that, even if the defendant had not participated in the January 20, 2017 events at the victims' home, he still *knew* the property was probably stolen. "[An] inference may be drawn if the circumstances are such that a reasonable man of honest intentions, in the situation of the defendant, would have concluded that the property was stolen." (Internal quotation marks omitted.) *State* v. *Nunes*, 58 Conn. App. 296, 301, 752 A.2d 93, cert. denied, 254 Conn. 944, 762 A.2d 906 (2000). "[P]ossession of recently stolen property raises a permissible inference of criminal connection with the property, and if no explanation is forthcoming, the inference of criminal connection may be as a principal in the theft, or as a receiver under the receiving statute, depending upon the other facts and circumstances which may be proven." (Internal quotation marks omitted.) *State* v. *Foster*, 45 Conn. App. 369, 376, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997).

The jury heard David testify that the watch the defendant possessed at American Diamond Exchange mere days after the break-in was one of the stolen watches. Our review of the evidence, undertaken in a light most favorable to sustaining the verdict, reveals sufficient evidence on which the jury could have relied in concluding the defendant knew that the watch was stolen.

The defendant told the police initially that he had received the American Diamond Exchange card during a visit that concerned his Michael Kors watch. Kirker's handwriting on the card referenced a Rolex, however, and the defendant later told Nivakoff that he had received a Rolex watch from his brother in satisfaction of a debt. The defendant argues that the jury lacked a basis to refute his claim that he received the watch from his brother as payment without knowledge that it was stolen. The jury did not have to accept either of the defendant's explanations. Rather, the jury could have found that the defendant was not credible in light of the state's evidence of his inconsistent statements to the police and in light of the other evidence produced at trial.[9] The jury heard evidence that the victims identified Terrance Edwards, that the police connected the stolen watches to Terrance Edwards, and that Terrance Edwards was found in possession of David's documents. The jury could have understood the defendant's unsolicited reference to Nivakoff regarding Facebook identifications as suggesting that he knew the circumstances of the break-in, given how the victims identified the purported suspects through Facebook. On the basis of this evidence, construing all inferences in favor of

upholding the verdict, we conclude there was sufficient evidence for the jury to find that the defendant's brother was involved in the break-in, and to thus find that the defendant's explanation to the police for possessing the watch was not truthful.

II

The defendant next claims on appeal that the trial court erred by admitting into evidence a portion of Nivakoff's testimony regarding the surveillance video over his objection, in violation of the rule against hearsay. This is a close issue, but irrespective of whether the testimony is viewed as impermissible hearsay or not, we conclude that the trial court's admission of the testimony was harmless.

The following additional facts inform our analysis. David testified at trial that he was shown a surveillance video by Nivakoff at the police station. As previously stated in this opinion, he testified that he recognized "one of the watches" in that video—specifically, a diamond Rolex Datejust—as belonging to him. Nivakoff later testified at trial. During Nivakoff's testimony, the surveillance video from American Diamond Exchange was admitted into evidence and played to the jury. The defendant's hearsay claim concerns the state's direct examination of Nivakoff, objection by defense counsel, and the court's ruling, which occurred during the following colloquy:

"[The Prosecutor]: Now, after you viewed this video, did you show it to anybody else?

"[The Witness]: I showed it to David Frank.

"[The Prosecutor]: And when you showed it to David Frank was he able to identify items in that—in that video as his?

"[The Witness]: Ye—

"[Defense Counsel]: Objection. Hearsay.

"The Court: What's your claim on that?

"[Defense Counsel]: Asking—

"The Court: And hearsay, in other words, what David Frank identified.

"[Defense Counsel]: Yeah.

"The Court: Yeah. What's your claim on that?

"[The Prosecutor]: I'm just asking yes or no, did that happen?

"The Court: I'm going—I'll allow yes or no.

"[The Witness]: Yeah.

"The Court: Go ahead.

"[The Witness]: I'm sorry. Yes, he did."

Following Nivakoff's testimony, defense counsel did

not object to, or move to strike, the answer.[10]

We see no need to discuss in detail our analysis of the relevant legal principles and applicable standard of review, given our resolution of this issue. "Our standard of review for evidentiary claims is well settled. To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary." (Internal quotation marks omitted.) *State* v. *Michael T.*, 194 Conn. App. 598, 611, 222 A.3d 105 (2019), cert. denied, 335 Conn. 982,     A.3d     (2020).

The defendant argues that Nivakoff's testimony, answering "[y]es, he did" to the question of whether David had identified items in the video as his, was inadmissible hearsay. He claims that the testimony was offered for its truth, i.e., for the proposition that David asserted items in the video were his. The state argues that it elicited Nivakoff's testimony merely to clarify and to explain the process of Nivakoff's investigation. The state contends that it sought only a yes or no answer and did not attempt to elicit the identity of the items in the video.

For the purpose of resolving this claim, we will assume, without deciding, that the trial court improperly admitted hearsay through Nivakoff's testimony.[11] We thus turn to the question of whether the admission of Nivakoff's challenged testimony amounted to harmful error. Examining the evidence here, we cannot conclude, with a fair assurance, that the testimony substantially affected the jury's verdict, and we, therefore, determine that any error was harmless.

"When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . We have concluded that a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . We previously have considered a number of factors in determining whether a defendant has been harmed by the admission or exclusion of particular evidence. Whether such error is harmless in a particular case depends [on] a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Considering these various factors, we have declared that the proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error." (Internal quotation marks omitted.) *State* v. *Johnson*, 171 Conn. App. 328, 338, 157 A.3d 120 (2017).

In the present case, the state argues that the hearsay testimony was harmless error because the state had previously elicited the substantive facts at issue from David and did not need Nivakoff's testimony to prove that the items belonged to him. We agree. Nivakoff's testimony, to which the defendant objects, was cumulative of David's testimony in which he identified a Rolex watch in the video as being his. Nivakoff's testimony established only that David had identified items as his, which the jury had heard from David himself. See *State* v. *Kerr*, 120 Conn. App. 203, 215–16, 991 A.2d 605 (defendant not harmed by hearsay statements of two witnesses, where testimony of one was "largely parallel" of other witness' testimony and other was cumulative), cert. denied, 296 Conn. 907, 992 A.2d 1136 (2010).

The defendant argues that the error was harmful because Nivakoff's testimony referenced "items," while David testified only that a single item in the video—a Rolex Datejust watch—belonged to him. He argues that due to uncertainty as to which of the two Datejust watches David's identification applied to, which comprises his first insufficiency of the evidence claim, the state needed to rely on Nivakoff's testimony that David identified "items" in the plural in order to establish that the defendant possessed stolen property exceeding a value of $10,000. Because we conclude in part I of this opinion that the evidence was sufficient for the jury to conclude that David identified a stolen watch with a value exceeding $10,000, we reject the defendant's claim of harm. Thus, because the defendant did not challenge the admissibility of David's testimony on this point, we conclude he was not harmed by Nivakoff's testimony.

### III

The defendant next claims that the trial court abused its discretion by prohibiting him from cross-examining Samantha about her drug dealing subsequent to the break-in. We do not agree that the court abused its discretion in declining to permit cross-examination on what we view as a collateral matter.

The following additional facts inform our analysis. Before Samantha testified, the court heard argument on the state's motion in limine to preclude certain evidence of her criminal history. She testified that she had felony and misdemeanor convictions. The court limited the defendant's examination regarding these convictions to general terms without specific references to the offenses involved. Several of her convictions concerned illegal storage and possession of narcotics. In her subsequent testimony, she confirmed her criminal history and admitted that she had sold drugs from her home, including to Dijon Edwards and Marcel. She also admitted that she had purchased cocaine from Terrance Edwards and admitted on both direct and cross-exami-

nation that she had lied to the police during the investigation regarding her drug dealing. She also testified that she stopped selling pills after the break-in because it was dangerous.

Defense counsel asked the court, outside the presence of the jury, to allow him to cross-examine Samantha concerning her arrest on July 5, 2017, which led to her conviction in November, 2017, of illegal storage of narcotics. Defense counsel argued that because Samantha had been found with a large quantity of pills and cash on her person,[12] it was suggestive of continued drug dealing and cast doubt on the veracity of her previous testimony that she had stopped selling drugs after the break-in. The prosecutor argued in response that this line of inquiry was a collateral issue because the witness had been convicted only of illegal storage of narcotics, and that litigating it would require bringing in a police officer for an "expert opinion on possession with intent to sell." The court allowed defense counsel to cross-examine Samantha outside the presence of the jury. She testified that the pills with which she had been found in July, 2017, were for her own use. The court ultimately ruled that the defense could not cross-examine her on the underlying facts of the July, 2017 arrest, on the basis of her testimony that she had ceased selling pills and the fact that she had been convicted only of possession.[13] On cross-examination before the jury, Samantha admitted that she sold pills to Marcel the day after she was interviewed by the police concerning the break-in, in order to recoup money that she had lost. She stated that this "must've slipped [her] mind" during her previous testimony, and insisted that this was the last sale she had conducted.

The defendant argues that he should have been permitted to cross-examine Samantha on the facts of her July, 2017 arrest in order to impeach her previous testimony by suggesting that she had lied about ceasing to sell drugs after her sale to Marcel. He contends that the intended cross-examination regarding Samantha's arrest was offered to prove that she had lied under oath, rather than to use the conviction itself, and thus fell outside the ambit of § 4-5 of the Connecticut Code of Evidence.[14] We do not agree.

We begin our analysis by setting forth the relevant legal principles and applicable standard of review. "Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Bermudez*, 195 Conn. App. 780, 806, 228 A.3d 96, cert. granted on other grounds,

335 Conn. 908, 227 A.3d 521 (2020). "[I]t is well settled that [a] court . . . [may] exclude . . . evidence [that] has only slight relevance due to . . . its tendency to inject a collateral issue into the trial. . . . An issue is collateral if it is not relevant to a material issue in the case *apart from its tendency to contradict the witness.* . . . This is so even when the evidence involves untruthfulness and could be used to impeach a witness' credibility." (Citations omitted, emphasis in original; internal quotation marks omitted.) *State* v. *Annulli*, 309 Conn. 482, 493, 71 A.3d 530 (2013).

Section 6-7 (b) of the Connecticut Code of Evidence provides in relevant part: "Evidence that a witness has been convicted of a crime may be introduced by . . . (1) examination of the witness as to the conviction . . . ." The underlying facts of the conviction may not be used to impeach the witness. See *State* v. *Denby*, 198 Conn. 23, 30, 501 A.2d 1206 (1985), cert. denied, 475 U.S. 1097, 106 S. Ct. 1497, 89 L. Ed. 2d 898 (1986). "If the crime for which the witness was convicted is admissible on the merits of the case, however, the facts surrounding the crime are admissible to the extent they are relevant to a material issue in the case." E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 6.29.8 (a), p. 401, citing *State* v. *Denby*, supra, 30–32.

Here, the crime for which Samantha was convicted, in the court's view, was a matter unrelated to the material issues at trial; rather, it was relevant only to cast doubt on her credibility before the jury. Samantha's drug dealings were not a material issue in the trial. See *State* v. *Annulli*, supra, 309 Conn. 494–95 (evidence sought on cross-examination properly excluded because it was not related to material issue "apart from its tendency to contradict the witness" (emphasis omitted; internal quotation marks omitted)).

Section 6-6 (b) of the Connecticut Code of Evidence provides that a witness may be cross-examined on specific instances of conduct if probative of truthfulness, but extrinsic evidence may not be used to prove those instances. If denied, the examiner must take the witness' answer. See E. Prescott, supra, § 6.28.5, p. 390. The court allowed defense counsel to inquire of Samantha whether she had sold drugs after her sale to Marcel; she denied it. The court was not required to permit further examination. See *State* v. *Annulli*, supra, 309 Conn. 495.

We agree with the state that allowing cross-examination to demonstrate that Samantha lied about her drug dealing would result in a "minitrial of Samantha," which would require further offers of proof to determine whether or not she had continued to sell drugs. Such extrinsic evidence is normally not permitted. "[E]xtrinsic evidence is *not* admissible for impeachment on a collateral matter . . . ." (Emphasis in original.) *State*

v. *Annulli*, supra, 309 Conn. 497–98; see id., 498 (stating that "the introduction of such evidence, if permitted, would have expended a disproportionate amount of time in relation to the issue's probative value"). Samantha's conviction of illegal storage of narcotics did not tend to establish that she lied about ceasing to sell controlled substances. The court acted well within its discretion in determining that the defense had "no evidence" that the witness had continued to sell narcotics and that impeaching her on this point would be an overly speculative collateral inquiry necessitating impermissible extrinsic evidence.

Moreover, the court gave the defendant wide latitude to impeach Samantha through other avenues, such as the fact that she had been convicted of multiple felonies, that she had bought and sold drugs, and that she first testified that she ceased selling drugs after the break-in before subsequently admitting to one additional sale to Marcel following the break-in. As the court stated, the jury was equipped to assess the credibility of Samantha's testimony that the pills she was found with were for personal use and that she had not continued to sell them. The court did not abuse its discretion in limiting the defendant's cross-examination of Samantha.

IV

The defendant's final claim on appeal is that the trial court committed "structural error" in its jury instruction regarding reasonable doubt.[15] The defendant specifically objected to the court's charge, "It is such a doubt as, in the serious affairs that concern you, you would heed; that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance."[16] He claims that the inclusion of the words "upon it" in the court's jury instruction "renders the instruction nonsensical" because it then "means almost the opposite of what it should." The defendant cannot prevail on the merits. As we stated in *State* v. *Holley*, 174 Conn. App. 488, 167 A.3d 1000, cert. denied, 327 Conn. 907, 170 A.3d 3 (2017), cert. denied,      U.S.     , 138 S. Ct. 1012, 200 L. Ed. 2d 275 (2018), in which the same model jury instruction was used, "our Supreme Court repeatedly has upheld the use of instructions that utilized the very language the defendant challenges. . . . [A]s an intermediate court of appeal, we are unable to overrule, reevaluate, or reexamine controlling precedent of our Supreme Court. . . . As our Supreme Court has stated: [O]nce this court has finally determined an issue, for a lower court to reanalyze and revisit that issue is an improper and fruitless endeavor. Accordingly, since our Supreme Court already has determined that the challenged description of reasonable doubt is not improper, we cannot conclude to the contrary." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 494–95. This court is bound by these precedents.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Samantha identified herself as "Samantha Rose DeMetro" when she was sworn in to testify, but she subsequently answered to the name "Mrs. Frank" during her testimony. For clarity, we will refer to her in this opinion as Samantha Frank.

[2] Samantha and her husband David Frank both testified that they did not know Marcel's last name.

[3] Nivakoff testified at trial that she "thought it was kind of odd that he would have brought it up."

[4] The defendant concedes in his brief that he is pictured in the video.

[5] To the extent that the brand of the second watch in the video, which Kirker inspected, is disputed, the jury could have found that it was a Rolex. The defendant contends in his brief that the second watch's brand was unidentified. Kirker, however, referred to the second watch as a Rolex.

[6] The defendant also contended at oral argument before us that the diamonds were a red herring because when David explained how he knew the watch was his, he referenced the "condition" and the "dial," but did not mention diamonds. This vague description does not preclude a reasonable inference that the watch stolen from David had diamonds on it, particularly given that the jury heard David identify the watch as his "diamond Datejust" immediately prior.

[7] The defendant also contends that the court's jury instruction on larceny, that "[t]he third element is that the property had a value that exceeded $10,000," was unclear on what "value" actually meant because the court did not define it for the jury. To the extent that this raises an instructional error claim, we agree with the state that such a claim is not reviewable, because the defendant did not object to this part of the instruction at trial. See *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011) (acceptance of jury instructions without objection waives constitutional claim of instructional error on appeal).

[8] Although the watch itself was not in evidence, the jury was able to see the watches depicted in the surveillance video. The state could not very well offer a watch in evidence that had been stolen and not recovered.

[9] The defendant's arguments that his trip to American Diamond Exchange and behavior within the store were "not the kind of secretive activity expected of a purveyor of stolen property" are irrelevant because these arguments go to the weight of the evidence. The jury was free to weigh the state's evidence and the nature of the defendant's activity as described in his statements to the detective in reaching its verdict, and it was not required to infer what the defendant suggests.

[10] The defendant argues that the question elicited hearsay but, because there was no objection or motion to strike the answer, we question whether the issue is properly preserved for review. "It is usually the case that when . . . the answer to [a] question contains inadmissible material, an objection made upon the answer is seasonable . . . . The proper form of such an objection is a motion to strike the answer." (Citations omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, 75 Conn. App. 364, 374, 815 A.2d 1261 (2003), rev'd on other grounds, 272 Conn. 515, 864 A.2d 847 (2005). We need not decide this issue of preservation, however, because we conclude that admission of Nivakoff's testimony was harmless error, if any.

[11] We note that the state's offer of David's identification has relevance both to the sequence of events in the investigation and to the truth of the matter asserted. Following the presentation of the video to the jury, the state asked Nivakoff whether David had identified items in the video as his. Of some concern is the fact that in essence, Nivakoff's "yes" response could be construed as testimony that David asserted his ownership of the items to her. The state's question could be construed as an attempt to elicit testimony of such an assertion.

[12] Samantha testified that she had 148 Alprazolam pills, 40 Risperdal pills, 82 acetaminophen and hydrocodone pills, and 125 TEVA diazepam pills, as well as $1600 in cash.

[13] The court ruled as follows: "She testified, and the jury is going to assess her credibility, counsel, that she hasn't sold pills since January 20, 2017, the date of this incident. She has indicated in this offer of proof that the pills that she purchased . . . were for her own personal use over the course of time . . . and that's her testimony . . . from what's in front of me now

. . . I'm not going to allow a challenge to the—your claimed underlying facts of her arrest . . . she has admitted to the felony there, but again it's not a sale, it's a possession case."

[14] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) . . . Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person except as provided . . . .

"(c) . . . Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

[15] "Structural errors" have been defined as "fundamental defects in the trial mechanism that affect the entire framework within which the trial proceeds, rather than simply an error in the trial process itself." (Internal quotation marks omitted.) *State* v. *Vines*, 71 Conn. App. 751, 758, 804 A.2d 877 (2002), aff'd, 268 Conn. 239, 842 A.2d 1086 (2004). The defendant claims that the jury instruction in this case was deficient and thus constitutes structural error under *Sullivan* v. *Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). See id., 278–82 (holding that constitutionally deficient reasonable doubt instruction requires reversal).

[16] The language in question is taken from the model criminal jury instructions on the Judicial Branch website. See ConnecticutCriminal Jury Instructions 2.2-3 (November 20, 2017), available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited January 18, 2021).